Alfred MANCUSO, Petitioner–Appellant,

v.

Victor HERBERT, Superintendent, Collins Correctional Facility, Respondent–Appellee.

Docket No. 97–3644.

United States Court of Appeals, Second Circuit.

Jan. 25, 1999.

William B. Carney, The Legal Aid Society, New York, New York, for Petitioner–Appellant.

Caroline R. Donhauser, Assistant District Attorney for Kings County, Brooklyn, New York, for Respondent–Appellee.

Before: WINTER, Chief Judge, PARKER, Circuit Judge, and SCHWARZER,* District Judge.

WINTER, Chief Judge:

This motion asks us to reconsider our July 7, 1998 order recalling the mandate in this matter and granting Alfred Mancuso's motion to remand his 28 U.S.C. § 2254 habeas corpus petition to the district court. Through a procedural mix-up, appellee ("the state") was not given an opportunity to respond to petitioner's motion for recall. It now argues that our order granting the motion for recall in light of the Supreme Court's recent decision in *Stewart v. Martinez–Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), was erroneous. We agree. Accordingly, we grant the motion for reconsideration, vacate our prior order, and deny Mancuso's motion for recall of the mandate.

* The Honorable William W Schwarzer, of the United States District Court for the Northern District of California, sitting by designation.

Alfred Mancuso was convicted of second-degree murder in 1978 in Kings County, New York. He filed four habeas petitions between 1980 and 1993. All but the last were denied on the merits. Even though the fourth petition raised claims that had already been adjudicated and rejected by a federal court, the district court, on September 2, 1994, dismissed the fourth petition without prejudice for failure to exhaust state remedies. In 1997, after exhausting state remedies, petitioner filed his fifth habeas petition in district court, claiming merely to renew his earlier dismissed-without-prejudice petition. The district court transferred the petition to this court pursuant to the gatekeeping provisions of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2244.[1]

On February 2, 1998, Mancuso moved for a remand of his petition to the district court, arguing that the pre-AEDPA law applied to his renewed habeas application. By order entered March 6, 1998, we reconstrued Mancuso's motion as a motion for permission to file a successive habeas petition, denied that motion, and dismissed the petition.

On June 22, 1998, Mancuso moved for an order recalling the mandate and granting his prior motion for a remand in light of the Supreme Court's decision in *Martinez–Villareal*. The state failed to file opposition papers, and on July 7, 1998, we granted Mancuso's motion. The state now moves for reconsideration of this latter order and for a denial of petitioner's motion to recall the mandate.

 The Federal Rules of Appellate Procedure and this court's Local Rules make no mention of "motions for reconsideration." Therefore, we construe the government's motion for reconsideration as a petition for rehearing pursuant to Fed. R.App. P. 40 and Local Rule 40. While such petitions are appropriate where, as here, a petitioner believes the court has overlooked or misapprehended significant facts or legal arguments, *see* Fed. R.App. P. 40(a), *United States v. Reilly,* 91 F.3d 331 (2d Cir.1996), the AEDPA provides that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and *shall not be the subject of a petition for rehearing* or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E) (emphasis added).

 This language might suggest that we have no authority to consider the state's petition for rehearing. Indeed, it might also suggest that, having already denied Mancuso's habeas petition as successive, we had no authority to consider his June 1998 motion to recall the mandate and remand his petition. However, while Section 2244(b)(3)(E) prohibits those petitions that seek reconsideration of the merits underlying a grant or denial of a habeas petition, *see Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 1500, 140 L.Ed.2d 728 (1998) ("In a § 2254 case, a prisoner's motion to recall the mandate *on the basis of the merits of the underlying*

---

**1.** The AEDPA, which took effect on April 24, 1996, provides in pertinent part:

"(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole,

would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

. . . .

(E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari."

28 U.S.C. § 2244.

*decision* can be regarded as a second or successive application for purposes of § 2244(b)" (emphasis added)), it does not bar petitions that ask for reconsideration of the jurisdictional question of whether the AEDPA even applies, *i.e.*, while Section 2244(b)(3)(E) governs how petitions are treated once they are properly located within the AEDPA framework, it does not restrict our authority over the threshold question of whether the AEDPA even applies. We therefore turn to the question of whether a petition for rehearing regarding the applicability of the AEDPA in the instant case should be granted.

■ Mancuso argues that the state's motion for reconsideration should be denied because it is an untimely response to his recall motion, in that, under our Local Rules, it had either seven or ten days to respond depending on how the motion was served. *See* Local Rule 27(b). The state explains that it failed to file a timely response to Mancuso's recall motion due to a misunderstanding with our Clerk's office. Because the language of Mancuso's recall motion resembled the language of a petition for rehearing, the Clerk's office incorrectly informed the assistant district attorney that she need not file opposition papers unless requested by the court and reassured her that the court would not render a decision without first requesting such papers. The state's failure to file opposition papers thus appears to be the result of genuine confusion about the type of motion made by Mancuso. We do not, therefore, consider the delay in filing a response a sufficient basis for denying the state's motion.

■ The state argues that reconsideration of our prior order is proper because we misapprehended significant facts or legal arguments. *See* Fed. R.App. P. 40(a). We agree.

■ As the Supreme Court recently explained in *Thompson*, "the courts of appeals are recognized to have an inherent power to recall their mandates." 118 S.Ct. at 1498. That power, however, "can be exercised only in extraordinary circumstances." *Id.* "One circumstance that may justify recall of a

mandate is '[a] supervening change in governing law that calls into serious question the correctness of the court's judgment.'" *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir.1996) (quoting *McGeshick v. Choucair*, 72 F.3d 62, 63 (7th Cir.1995)). Because Mancuso's motion to recall the mandate was based solely on the Supreme Court's decision in *Martinez–Villareal*, the issue before us is whether that decision constituted an extraordinary circumstance.

In *Martinez–Villareal*, the petitioner had filed three federal habeas petitions prior to the AEDPA's effective date, all of which were dismissed without prejudice. *See Martinez–Villareal*, 118 S.Ct. at 1620. All the claims raised in his fourth pre-AEDPA petition—except for his *Ford* claim, *see Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (holding that Eighth Amendment prohibits execution of insane), which stated that he was incompetent to be executed—were denied on the merits. *See Martinez–Villareal*, 118 S.Ct. at 1620. His *Ford* claim, however, was dismissed without prejudice as premature. After the AEDPA's effective date, the petitioner again filed a habeas petition, renewing his now-ripe *Ford* claim. Because that claim had never been adjudicated on the merits by a federal court, the Ninth Circuit held that the AEDPA's restrictions did not apply "and that there was accordingly no need for [Martinez–Villareal] to apply for authorization to file a second or successive petition." *Id.* The Supreme Court affirmed.

While the Court agreed that Martinez–Villareal's post-AEDPA petition was not a second or successive petition, its opinion is unclear as to whether the AEDPA or pre-AEDPA law applied. Indeed, selected passages seem to support Mancuso's position in the instant case. Early in the opinion, for example, the Court stated: "This may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, but *this does not mean that there were two separate applications*, the second of which was necessarily subject to ·§ 2244(b)." *Id.* at 1621 (emphasis added). It further noted: "A court where such a petition was filed · could adjudicate these

claims *under the same standard* as would govern those made in any other first petition." *Id.* at 1622 (emphasis added).

 Despite such language, however, *Martinez–Villareal* did not hold that the AEDPA does not treat habeas petitions filed before the AEDPA as an earlier petition for purposes of that statute. Rather, it held only that a claim that was raised in a pre-AEDPA habeas petition, but which was dismissed without prejudice and therefore *never* adjudicated by a federal court, cannot constitute a "second or successive" petition *under the AEDPA.* In other words, while the AEDPA is applicable to all petitions filed after its effective date, *see Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), its restrictions do not apply if the petition is not a "second or successive" application. *See Martinez–Villareal,* 118 S.Ct. at 1620–21.[2] The Court expressly did not reach the question presented by the instant case: "the situation where a prisoner raises a ... claim for the first time [or, in Mancuso's case, for the second time] in a petition filed after the federal courts have already rejected the prisoner's initial habeas application." *Id.* at 1622 n. *. In the Court's words: "we have no occasion to decide whether such a filing would be a 'second or successive habeas corpus application' within the meaning of AEDPA." *Id.* Implicit in this last statement is an acknowledgment that the AEDPA does apply (even if its restrictions do not).

In any event, the only question before the Supreme Court was whether a never-before adjudicated claim that was dismissed without prejudice could, when renewed after the AEDPA's effective date, constitute a "second or successive" petition under the AEDPA. In the instant case, it is undisputed that Mancuso's petition is successive, under either the pre- or post-AEDPA regime. Indeed, even if Mancuso's post-AEDPA claims do not constitute a "separate" application (because the identical claims in his fourth petition were dismissed without prejudice), they nevertheless constitute a "second or successive" application because they were earlier denied on the merits by a federal court considering his third petition.[3]

Because *Martinez–Villareal* suggests that the AEDPA does apply to petitions filed after its effective date, even though the initial petition in that case was filed before that date—or, at most, is ambiguous on the issue—it does not definitively establish that we erred in finding that Mancuso's most recent habeas petition was subject to the AEDPA and was successive under that statute. *Martinez–Villareal* does not, therefore, constitute an "extraordinary circumstance[ ]," warranting an order recalling our mandate.

 We conclude that the AEDPA applies to a habeas petition filed after the AEDPA's effective date, regardless of when the petitioner filed his or her initial habeas petition and regardless of the grounds for dismissal of such earlier petition.[4] Nothing in *Martinez–Villareal* commands otherwise. Moreover, this holding comports both with the statute's plain meaning and with congressional intent. *See Lindh,* 521 U.S. at ——, 117

2. In this respect, it is consistent with our decision in *Camarano v. Irvin,* 98 F.3d 44 (2d Cir. 1996) (per curiam), and the decisions of our sister circuits. *See, e.g., McWilliams v. Colorado,* 121 F.3d 573, 575 (10th Cir.1997) (per curiam) ("a habeas petition filed after a prior petition is dismissed without prejudice for failure to exhaust state remedies does not qualify as a 'second or successive' application"); *In re Gasery,* 116 F.3d 1051, 1052 (5th Cir.1997) (agreeing with other circuits that "a habeas petition refiled after dismissal without prejudice is neither second nor successive"); *Christy v. Horn,* 115 F.3d 201, 208 (3d Cir.1997) (reaching same result); *Benton v. Washington,* 106 F.3d 162, 165 (7th Cir.1996) (same); *In re Turner,* 101 F.3d 1323 (9th Cir. 1996) (same); *Dickinson v. Maine,* 101 F.3d 791 (1st Cir.1996) (per curiam) (same).

3. The Supreme Court in *Martinez–Villareal* merely noted that "none of our cases ... have ever suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies and who then did exhaust those remedies and returned to federal court, was *by such action* filing a successive petition." 118 S.Ct. at 1622 (emphasis added). In the case at bar, Mancuso's fifth petition is a "second or successive" application not because his fourth petition was dismissed for failure to exhaust state remedies but because a federal court adjudicated his third petition on the merits and dismissed it.

4. Again, whether a petition is a "second or successive" application *under* the AEDPA is an entirely different question. *See Martinez–Villareal,* 118 S.Ct. 1618; *Camarano,* 98 F.3d at 47.

S.Ct. at 2063; *Hatch v. Oklahoma*, 92 F.3d 1012, 1014 (10th Cir.1996) (applying AEDPA to petitioner "[b]ecause the [AEDPA] was already in place at the time of Hatch's filing with this Court") (per curiam). *See also Pratt v. United States*, 129 F.3d 54, 58 (1st Cir.1997) ("Congress intended that AEDPA apply to all Section 2255 petitions filed after its effective date"), *cert. denied*, —— U.S. ——, 118 S.Ct. 1807, 140 L.Ed.2d 945 (1998); *In re Vial*, 115 F.3d 1192, 1198 n. 13 (4th Cir.1997) (en banc) ("We assume without deciding" that AEDPA applies to prisoner who filed his first Section 2255 motion before and his second motion after AEDPA's effective date); *Roldan v. United States*, 96 F.3d 1013, 1014 (7th Cir.1996) (applying AEDPA to petition filed after its effective date even though first collateral attack concluded before AEDPA's effective date).

We therefore grant the motion to reconsider, vacate our prior order, and deny Mancuso's motion for recall of our mandate.