Robert RODRIGUEZ, Petitioner–Appellant,

v.

Robert MITCHELL, Superintendent, Eastern Correctional Facility, and Eliot Spitzer, Attorney General, State of New York, Respondents–Appellees.

Docket Nos. 99–2170, 99–3507.

United States Court of Appeals, Second Circuit.

Submitted Feb. 25, 1999.

Decided June 6, 2001.

Larry W. Yackle, Boston University School of Law (Letty Di Giulio and Robert Procter, on the brief), Boston, MA, for Petitioner–Appellant.

Thomas M. Ross, Assistant District Attorney, Kings County (Charles J. Hynes, District Attorney, and Roseann B. MacKechnie, Assistant District Attorney, on

the brief), Brooklyn, NY, for Respondents–Appellees.

Before: LEVAL, POOLER, and HEANEY,* Circuit Judges.

LEVAL, Circuit Judge:

Petitioner, Robert Rodriguez, seeks: (1) a certificate of appealability, authorizing him to appeal the denial of his motion under Fed.R.Civ.P. 60(b) to vacate a judgment entered by the United States District Court for the Eastern District of New York (Jack B. Weinstein, *District Judge*), denying his petition for a writ of habeas corpus; and (2) authorization to file a second habeas petition.

Respondents contend the motion under Rule 60(b) is a second or successive petition, subject to the standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(b). We conclude that a motion under Rule 60(b) to vacate a judgment denying habeas is not the equivalent of a second or successive habeas petition subject to the standards of § 2244(b). We nonetheless affirm the denial of petitioner's motion under Rule 60(b). As to the petitioner's request to file a second petition raising two claims, we hold: (1) the claim that was originally dismissed in his the first petition by reason of his failure to exhaust state remedies may be raised without our authorization because the successive petition rules of § 2244(b) do not apply to claims dismissed for failure to exhaust state remedies; and (2) the claim not raised in the first petition may not be raised in a second petition because, regardless whether the AEDPA successive petition rules apply where the first petition was filed prior to the AEDPA's effective date, petitioner would not be permitted to file this claim under *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)—the law governing the filing of successive petitions at the time he filed his first petition.

## BACKGROUND

Petitioner Robert Rodriguez and three other men—Kareem Abdul Latif, Milton Cotto, and Michael Donnes—were charged in New York with murdering the owner of a pharmacy and a customer, while attempting to rob the pharmacy on October 12, 1982.

Rodriguez, Latif, and Cotto were tried jointly. Donnes was never found. At trial, the government offered into evidence statements Rodriguez had made to the police, including an admission that, before he went to the pharmacy, he knew that Latif was armed and that Latif planned to rob the store and "break [the] neck" of the pharmacist. Latif's girlfriend Sondra Nieves testified that about five days after the crime, Rodriguez told her that he had held the customer while Latif shot her. Rodriguez's trial attorney, Lawrence J.D. Mort, did not cross-examine Nieves and did not call Rodriguez to the stand. The trial judge stated on the record that Nieves had not been given a polygraph exam.

On December 2, 1983, Rodriguez was convicted of four counts of second-degree murder, for the intentional and felony murders of the pharmacist and the customer, and one count of first-degree attempted robbery.

While his appeal was pending, Rodriguez sought documents relevant to his case pursuant to the New York Freedom of Information Law ("NYFOIL"). He ob-

---

* The Honorable Gerald W. Heaney, United States Circuit Judge for the Eighth Circuit, sitting by designation.

tained a taped statement that police had taken from Donnes's girlfriend, Nancy Santiago, prior to trial. In this statement, Santiago reported what Donnes had told her after the crime:

> Santiago: [Donnes] [t]old me that [Latif] had invited all to the pharmacy and he told me he was going to get some pills and to pay back all that he owes him. So they went with him and the guys waited ... where the counter is and [Latif] took Doc in the back with him.... Then the guys had heard 2 shots. Then [Latif] came out and the guys said what are you doing and he told the guys to shut up and then he shot the girl in the head.
>
> Police: What did [Donnes] say that he did when all of this was going on?
>
> Santiago: They just sat there, and they were all in shock (inaudible) what was happening and they all started just running off.

On July 7, 1986, Rodriguez moved in state court to vacate the judgment, arguing, inter alia, that Santiago's statement was exculpatory material that should have been disclosed under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On October 6, 1986, the Supreme Court denied the motion, holding that Rodriguez failed to show that the statement would have changed the outcome of the trial. On September 23, 1991, the Appellate Division affirmed Rodriguez's conviction, *see People v. Rodriguez*, 176 A.D.2d 299, 574 N.Y.S.2d 399 (2d Dep't 1991), and on January 28, 1992, Rodriguez was denied leave to appeal to the Court of Appeals, *see* 79 N.Y.2d 863, 580 N.Y.S.2d 735, 588 N.E.2d 770 (1992).

In the meantime, Rodriguez continued his efforts to obtain documents pursuant to NYFOIL. He claims that at some point in 1993, he obtained a copy of a report of a polygraph exam that, contrary to the trial judge's statement on the record, had allegedly been administered to Nieves prior to trial. The report concluded that Nieves had "attempt[ed] deception" in answering certain questions and that she was "withholding pertinent information." In addition, the examiner stated in the report that he had told Nieves that if she did not account for the polygraph results, she might be arrested and withdrawn as a prosecution witness before the grand jury. According to the report, Nieves then asked to speak with the Assistant District Attorney, and after doing so, she "conceded [to the examiner] that she had a conversation only with [Latif] at his apartment about his knowledge of the incident last October 12th."

On January 3, 1994, Rodriguez filed a petition for habeas corpus in the United States District Court for the Eastern District of New York, challenging his conviction on the ground, inter alia, that his trial lawyer, Mort, had rendered ineffective assistance by refusing to allow Rodriguez to testify and by failing to cross-examine Nieves.[1] In April 1995, the court directed the prosecution to call Mort to testify. As Mort lived in Ohio, the prosecution made arrangements to fly him to New York. Mort, however, refused to come, and instead sent a letter to the court stating a number of reasons why he did not wish to testify, including that "[m]y memory is not well" and "[m]y professional reputation has been blemished by Ohio Supreme Court and U.S. Supreme Court 53 Ohio

---

1. Rodriguez filed an action entitled a petition for habeas corpus prior to 1994. However, as it did not challenge his criminal conviction, Rodriguez and the respondents agree that the 1994 petition was Rodriguez's first habeas petition within the meaning of § 2244(b).

St.3d 260, 560 N.E.2d 204." In addition, he claimed to have a small bankruptcy practice in Ohio, which did not permit him to leave. On April 17, the district court denied the habeas petition in a ruling from the bench.

The following day, Rodriguez's new lawyer asked the court to reconsider its decision in light of new evidence revealed by Mort's letter—namely, the Ohio Supreme Court opinion cited in the letter. That opinion held that Mort was not entitled to admission into the Ohio bar without examination because he failed to "establish[ ] that problems associated with his past mental health did not affect his present fitness to practice law." *In re Mort,* 53 Ohio St.3d 260, 560 N.E.2d 204, 206 (1990). The opinion further stated that, according to a doctor's report, Mort suffered from "probable chronic undifferentiated schizophrenia" and "described paranoid ideas and said he was experiencing auditory hallucinations." *Id.* at 205 (internal quotations omitted). In his motion for reconsideration, Rodriguez argued that Mort's mental illness indicated he may not have had valid strategic reasons for not calling Rodriguez to the stand and not cross-examining Nieves.

The court denied the "[m]otion to reconsider . . . on the merits," stating that "[i]n any event, this argument was not raised in state court and has not been exhausted." On April 20, judgment denying the habeas petition and the motion to reconsider was entered, and Rodriguez appealed.

On February 23, 1996, we affirmed the dismissal of the habeas petition by summary order. As to the claims that Rodriguez raised in his habeas petition—including the claim of ineffective assistance of counsel, based on Mort's refusal to let him testify and to cross-examine Nieves—we affirmed the dismissal on the merits, holding that we had "no reason to disturb the District Court's determination that [Rodriguez] made his own decision not to testify after consultation with counsel" and that the "decision to forgo cross-examination [of Nieves] . . . was a legitimate strategy choice." *Rodriguez v. Mitchell,* No. 95–2310, 1996 WL 80005, at *2 (2d Cir., Feb.23, 1996). As to the claim that Mort rendered ineffective assistance because he suffered from mental illness, "[w]e decline[d] to review this claim because it is unexhausted," finding that Rodriguez "has not raised in state court the significantly different factual allegations that form the basis for the claim." *Id.*

On April 16, 1996, Rodriguez filed a motion in the district court to vacate the judgment pursuant to Fed.R.Civ.P. 60(b) on the ground that Mort had made fraudulent representations in his letter to the court—primarily, the representation that he was a practicing lawyer in Ohio—and that by means of these misrepresentations he was able to extricate himself from testifying and thereby corroborating Rodriguez's claims. Rodriguez asked for the hearing to be reopened or for a new hearing to be held so that Mort's testimony could be taken.

On May 12, 1996, the court denied the Rule 60(b) motion "on [the] basis of [the] Second Circuit affirmance." On appeal, we held that our prior affirmance of the judgment dismissing Rodriguez's habeas petition precluded the district court from ruling on the merits of his Rule 60(b) motion to vacate that judgment. We "[a]ssum[ed] for the sake of argument that Mort's representation [that he was a lawyer in Ohio] constituted fraud under Rule 60(b)," but concluded that the district court was without power to vacate because of our rulings on Rodriguez's various ineffective assistance claims, which put them "beyond the authority of the District Court." *Rodriguez v. Mitchell,* No. 96–

2534, 1997 WL 311801, at *1–*2 (2d Cir., June 4, 1997). These rulings were: "(i) that the mental illness claim was unexhausted, (ii) that the failure to cross-examine the witness was an acceptable trial strategy, and (iii) that Rodriguez had made his own decision not to testify after consultation with counsel." *Id.* at *1.

On May 12, 1997, Rodriguez moved in state court to vacate the judgment of conviction, arguing, inter alia, that: (1) Mort's mental illness caused him to render ineffective assistance of counsel; and (2) the prosecution failed to disclose *Brady* material—namely, Santiago's statement to the police and Nieves's polygraph report.

On November 28, 1997, the motion to vacate was denied. As to the ineffective assistance claim, the court held that Mort appeared to be "lucid and coherent" at trial and that there was no evidence that his "decisions ... were not based on reasonable strategic decisions." In addition, the court observed that the medical record cited in the Ohio Supreme Court's opinion indicated that Mort was mentally ill in 1987, but "d[id] not show that such a condition existed at the time of [Rodriguez's] 1983 trial." The court then rejected the *Brady* claim based on the Nieves polygraph report, because it concluded the report was "false and forged." The court further reasoned that, even if the report was not a forgery, its submission to the jury would not have changed the outcome of the trial. According to the court, the report could only have been used to impeach Nieves and the polygraph examiner by showing that they lied in claiming Nieves never underwent a polygraph exam. It is unlikely, the court concluded, that the jury would have decided based on this impeachment to discount Nieves's testimony entirely, but even if it had, it would still have had "convincing evidence of [Rodriguez's] intent to participate in the

robbery and murder." Finally, the court ruled that "[a]ll other claims are either procedurally barred and/or without merit." The Appellate Division denied leave to appeal.

On October 6, 1998, Rodriguez renewed his Rule 60(b) motion to vacate the judgment dismissing his habeas petition, arguing once again that Mort fraudulently represented in his letter to the court that he was a lawyer in Ohio. Rodriguez also argued that, as revealed by Mort's response to disciplinary charges Rodriguez filed against him with the New York Bar's Disciplinary Committee, Mort remembered the trial and therefore lied when he claimed in his letter to the court that his "memory is not well." Finally, Rodriguez claimed that Mort, in his response to the disciplinary charges, indicated that he had had lengthy interviews with the prosecutor by telephone, but the prosecution never revealed that it had "depose[d] Mr. Mort over the telephone" and thereby committed fraud.

On October 23, 1998, the district court denied the motion to vacate, holding that "[a]n appeal [has already] resulted in affirmance of dismissal" and that "[n]o basis for this motion is presented." Rodriguez sought a certificate of appealability ("COA"), allowing him to appeal the denial of the second Rule 60(b) motion. On March 3, 1999, the district court denied the COA, holding that "[t]his Court has ruled[,] ... an appeal has resulted in affirmance of dismissal," and "[n]o basis for this motion is presented." Rodriguez then requested that we issue the COA.

Meanwhile, on January 28, 1999, Rodriguez moved in this court for authorization to file a second habeas petition in the district court. By order of February 25, 1999, we denied authorization, holding that "on preliminary review, it appears that the requirements of 28 U.S.C. § 2244 do not appear to have been met." Noting, howev-

er, that "we have not had the benefit of counseled briefing on the part of either party on the issue of whether application of the Anti–Terrorism and Effective Death Penalty Act (AEDPA) would have an impermissible retroactive effect and [that] we also have not had time under provisions of 28 U.S.C. § 2244(b)(3)(D) adequately to consider all the issues raised by petitioner's authorization motion," we stayed the denial of authorization. We then ordered the appointment of counsel, and directed the parties to brief "[i]n addition to any other meritorious issues, ... whether application of the AEDPA [to petitioner's motion] would have an impermissible retroactive effect."

We then consolidated the motion for a COA with the motion for authorization to file a second habeas petition, stating that "[t]he parties may wish to brief, in addition to any other meritorious issues, whether the district court should have construed Rodriguez's Rule 60(b) motion as a second or successive 28 U.S.C. § 2254 petition."

## DISCUSSION

1) *Whether the district court properly disposed of Rodriguez's Rule 60(b) motion to vacate the judgment denying habeas*

The petitioner seeks a COA permitting him to appeal the denial of his second Rule 60(b) motion. The respondents argue that a COA should be denied because a Rule 60(b) motion to vacate a judgment denying habeas is in effect a second or successive habeas petition, and Rodriguez fails to comply with the AEDPA rules regulating such petitions. We find no merit to this argument.

a) *Whether a Rule 60(b) motion, seeking vacatur of a judgment denying habeas, is a second or successive petition*

█ The question whether a Rule 60(b) motion to vacate a judgment denying habe-

as should be considered as a second or successive habeas petition is one we have never directly addressed—though we have previously treated the denial of such a motion as we would any other motion under Rule 60(b), rather than as a successive petition. *See Matarese v. LeFevre*, 801 F.2d 98, 106–07 (2d Cir.1986) (holding upon review of a Rule 60(b) motion to vacate a judgment denying habeas, that "[a]n appeal from an order denying a rule 60(b)[ ] motion brings before us only the denial of the motion, not the merits of the underlying judgment" and that "[o]ur standard of review is whether the court abused its discretion in denying relief from the underlying judgment"). We now rule that a motion under Rule 60(b) to vacate a judgment denying habeas is not a second or successive habeas petition and should therefore be treated as any other motion under Rule 60(b).

A motion under Rule 60(b) and a petition for habeas have different objectives. The habeas motion under 28 U.S.C. § 2254 seeks to invalidate the state court's judgment of conviction. As to the motion under Rule 60(b), while it is undoubtedly a step on the road to the ultimate objective of invalidating the judgment of conviction, it does not seek that relief. It seeks only to vacate the federal court judgment dismissing the habeas petition. The grant of such a motion would not have the effect of invalidating the state conviction. It would merely reinstate the previously dismissed petition for habeas, opening the way for further proceedings seeking ultimately to vacate the conviction. The fact that the Rule 60(b) motion contemplates ultimately the vacating of the conviction is shared with every motion the petitioner might make in the course of pursuing his habeas—motions to compel disclosure or quash the respondent's discovery demands, mo-

tions for extension of time to answer the adversary's motion, motions to be provided with legal assistance, motions for summary rejection of the respondent's contentions. All such motions, like the motion under Rule 60(b), seek to advance the ultimate objective of vacating the criminal conviction. But each seeks relief that is merely a step along the way. In our view, neither these motions, nor the motion under Rule 60(b) that seeks to vacate the dismissal of the habeas petition, should be deemed a second or successive petition within the meaning of 28 U.S.C. § 2244(b).

Furthermore, the grounds asserted in support of the motion under Rule 60(b) may well have nothing to do with the alleged violations of federal rights during the state criminal trial that are asserted as a basis for the habeas. For example, a Rule 60(b) motion to vacate a federal judgment may be based on "(1) mistake, inadvertence, surprise, or excusable neglect" and "(3) fraud ..., misrepresentation, or other misconduct of an adverse party." Fed.R.Civ.P. 60(b). These references are to mistake, inadvertence, surprise, fraud, etc., in the course of the federal habeas proceedings, not in the litigation of the conviction against which the petition is directed. Thus, a court might vacate a judgment denying habeas pursuant to Clause (1) if it determines that the respondent engaged in unfair surprise by failing to notify the petitioner of the witnesses it planned to call in the habeas hearing. Likewise, it might vacate a judgment pursuant to Clause (3), if it determines that the respondent engaged in fraud by entering evidence it knew to be fraudulent into the record of the federal habeas proceeding. The fact that the respondent committed such unfair surprise or fraud during federal habeas proceedings, however, would not show that petitioner's federal rights were violated during the state criminal proceedings that resulted in his convic-

tion. Such showings might justify vacating the judgment denying habeas but would not justify vacating the criminal conviction attacked in the habeas proceeding.

We note that the ground petitioner asserts in support of his motion under Rule 60(b)—his claim that Mort, his state trial attorney, made fraudulent representations to the federal district court and that the respondent fraudulently concealed that respondent had deposed Mort—relates to the integrity of the federal habeas proceeding, not to the integrity of the state criminal trial. These grounds, if proven, would simply result in the reopening of the federal habeas proceeding—not in the vacating of the state criminal judgment.

It is true that Clause (2), specifying "newly discovered evidence," may refer either to evidence pertinent to the federal habeas proceeding or to evidence that might have been submitted in the state criminal proceeding. Nonetheless, the procedural object of the motion authorized by Rule 60(b) is simply to vacate the federal judgment dismissing the habeas petition, not to vacate the state conviction. The fact that the court to which the motion is addressed might conceivably go farther and grant the habeas in response to the motion does not in our view make such a motion a second habeas petition. The same would be true if, in the course of litigating the habeas, the petitioner moved for summary adjudication of his claim, or moved to quash the respondent's asserted defenses. In ruling on the motion in petitioner's favor, the court might go so far as to grant habeas, ruling that the conviction be vacated. It does not follow that such a motion should be considered a second petition.

We are aware that the majority of circuit courts that have considered this issue have held that a Rule 60(b) motion to

vacate a judgment denying habeas either must or may be treated as a second or successive habeas petition. These courts, however, have offered little explanation in support of their reasoning. Their opinions depend largely on conclusory statements and citations to one another.[2] In our view, better reasons support the conclusion that a Rule 60(b) motion to vacate a judgment denying habeas is not a second petition under § 2244(b).

b) *Whether the Rule 60(b) motion was properly denied*

 We nonetheless conclude that the district court acted properly in denying petitioner's motion under Rule 60(b).[3] "We review district court rulings on Rule 60(b) motions for abuse of discretion." *Transaero, Inc. v. La Fuerza Aerea Boliv-*

*iana,* 162 F.3d 724, 729 (2d Cir.1998), *cert. denied,* 526 U.S. 1146, 119 S.Ct. 2022, 143 L.Ed.2d 1033 (1999). Under this standard, we must affirm the grant or denial of vacatur, unless the "ruling [is based] on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (internal quotation marks omitted). We conclude that the district court correctly ruled that "[n]o basis for this motion is presented."

 Rodriguez seeks to vacate the judgment under two provisions of Rule 60(b): Clause (3), which permits relief from a judgment for "fraud ..., misrepresentation, or other misconduct of an adverse party," and Clause (6), which permits relief for "any other reason justifying relief from the operation of the judgment." Fed. R.Civ.P. 60(b). He argues that his entitle-

---

**2.** *See Hunt v. Nuth,* 57 F.3d 1327, 1339 (4th Cir.1995) (citing other circuits in support of ruling that "a district court may properly treat a Rule 60(b) motion as a successive habeas petition"); *United States v. Rich,* 141 F.3d 550, 551 (5th Cir.1998), *cert. denied,* 526 U.S. 1011, 119 S.Ct. 1156, 143 L.Ed.2d 221 (1999) (holding that "courts may treat motions that federal prisoners purportedly bring under Rule 60(b), but which essentially seek to set aside their convictions on constitutional grounds, as § 2255 motions," because "[t]here is a trend among circuit courts to look beyond the formal title affixed to a motion if the motion is the functional equivalent of a motion under § 2255"); *McQueen v. Scroggy,* 99 F.3d 1302, 1335 (6th Cir.1996) ("We agree with those circuits that have held that a Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition and therefore is subject to a cause and prejudice analysis."); *Burris v. Parke,* 130 F.3d 782, 783 (7th Cir.1997) ("Appellate courts agree that a post-judgment motion under Fed.R.Civ.P. 60(b) ... is a 'second or successive' application for purposes of § 2244(b)."); *Blair v. Armontrout,* 976 F.2d 1130, 1134 (8th Cir.1992) (holding that a "Rule 60(b)(6) motion [i]s the functional equivalent of a second petition for a writ of habeas corpus"); *Thompson v. Calderon,* 151

F.3d 918, 921 (9th Cir.1998) (en banc) (holding that "when the factual predicate for a Rule 60(b) motion also states a claim for a successive petition under 28 U.S.C. § 2244(b) ... the Rule 60(b) motion should be treated as a successive habeas petition"); *Lopez v. Douglas,* 141 F.3d 974, 975 (10th Cir.1998) (per curiam) (citing other circuit decisions in support of ruling that "[t]he Rule 60(b)(6) motion filed by Petitioner ... was a second habeas petition under the ... AEDPA"); *Felker v. Turpin,* 101 F.3d 657, 660 (11th Cir. 1996) (holding in accord with "decisions from other circuits that ... Rule 60(b) motions ... [are] essentially identical to successive petitions" (internal quotation marks omitted)).

**3.** Rodriguez did not directly appeal the denial of the second Rule 60(b) motion, but instead asks us to issue a certificate of appealability that would permit him to appeal the denial of this motion. Because Rodriguez filed his request for a COA pro se, his failure to understand that a COA is not ordinarily required to appeal the denial of a Rule 60(b) motion is excused, and we treat his request as a direct appeal of the denial of that motion. *See Sawyer v. American Fed'n of Gov't Employees,* 180 F.3d 31, 36 (2d Cir.1999) (observing that we "constru[e] the claims of [a] *pro se* litigant liberally").

ment results from the facts that: (1) Mort, his lawyer in the criminal trial, fraudulently represented in his letter to the district court that (a) he was a lawyer in Ohio and (b) he did not remember the petitioner's trial; and (2) the prosecution fraudulently failed to reveal that it had deposed Mort. We conclude that, under both Clauses (3) and (6), Rodriguez's motion was untimely and that, in any event, he failed to establish grounds for relief.

■ A motion under Clause (3) must be filed "not more than one year after the judgment ... was entered." Fed.R.Civ.P. 60(b). The district court entered the judgment denying Rodriguez's habeas petition on April 20, 1995. Rodriguez did not file the Rule 60(b) motion now before us until October 6, 1998, about three and one-half years later. Thus, the motion was untimely. Furthermore, even if it were timely, Rodriguez fails to establish grounds for granting the motion. A fraud committed by a witness in the habeas proceeding is not a "fraud ..., misrepresentation, or other misconduct *of an adverse party*," Fed.R.Civ.P. 60(b)(3) (emphasis added). As to the fraud allegedly committed by the prosecution by failing to disclose that it had deposed Mort—an argument raised by Rodriguez below, but not on appeal—the evidence proffered by Rodriguez reveals only that the prosecution had telephone conversations with Mort; it provides no reason to conclude that these conversation were depositions. Given Rodriguez's failure to establish that the prosecution ever deposed Mort, the district court committed no error in declining to grant the motion made on the ground that the prosecution fraudulently failed to disclose the deposition.

■ Motions brought under Clause (6) must be filed "within a reasonable time." Fed R. Civ. P. 60(b). We do not think that three and one-half years from the date judgment was entered is a reasonable time. Even if the motion were timely filed, it would still fail, because "[r]elief under Rule 60(b)(6) is appropriate only in cases presenting extraordinary circumstances," and Rodriguez has failed to allege any such circumstances. *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda*, 877 F.2d 189, 196 (2d Cir.1989) (internal quotation marks omitted).

We conclude therefore that the district court committed no error in denying Rodriguez's second Rule 60(b) motion, under both Clauses (3) and (6).

(2) *Whether Rodriguez may file a second habeas petition*

Rodriguez also seeks leave to file a second habeas petition, raising two claims: (1) his trial lawyer, Mort, provided ineffective assistance of counsel because Mort was mentally ill; and (2) the prosecution impermissibly withheld exculpatory *Brady* material—namely, a statement made to the police by Santiago (co-defendant Donnes's girlfriend) and a polygraph report taken of Nieves (co-defendant Latif's girlfriend). The first claim, regarding ineffective assistance, was included in the first petition,[4] but dismissed for failure to exhaust state remedies. The second claim, regarding the alleged *Brady* material, was not included in the first petition.

Under 28 U.S.C. § 2244(b)(3)(A), which took effect on April 24, 1996, a habeas petitioner seeking to file a second or successive petition must "move in the appropriate court of appeals for an order authorizing the district court to consider the

---

4. Rodriguez raised this claim in a motion to reconsider made the day after the district court denied the habeas petition in a ruling

from the bench, and judgment was subsequently entered denying both the petition and the motion.

application." A court of appeals may grant an order authorizing a second or successive petition "only if it determines that the application makes a prima facie showing that the application satisfies" a series of requirements. *Id.* § 2244(b)(3)(C). First, "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." *Id.* § 2244(b)(1). Second, a claim not presented in a prior application must be dismissed unless: (i) "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," *id.* § 2244(b)(2)(A); or (ii) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and ... the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," *id.* § 2244(b)(2)(B).

Rodriguez argues that, for two reasons, he need not comply with the limitations imposed by the AEDPA on the filing of his proposed successive petition. As to the ineffective assistance claim, he asserts that because it was dismissed for failure to exhaust, rather than on the merits, the AEDPA successive petition rules do not apply to it. As to the *Brady* claims, he argues that, because he filed his first petition (without these claims) prior to the effective date of the AEDPA, the application of the AEDPA successive petition rules to these claims would have an impermissible retroactive effect. For the reasons below, we agree that the AEDPA successive petition rules do not apply to the ineffective assistance claim. We find it unnecessary to decide whether application of these rules to the *Brady* claims would have an impermissible retroactive effect, because Rodriguez would not be permitted to file a second petition based on these claims even under the law that governed prior to the passage of AEDPA.

a) *Whether Rodriguez may file a second petition raising the ineffective assistance claim*

In *Camarano v. Irvin,* we held that the limitations imposed by the AEDPA on the filing of second and successive habeas petitions do not apply to prior petitions that were dismissed for failure to exhaust state remedies. 98 F.3d 44, 47 (2d Cir. 1996) ("[A] petition filed after a prior petition is dismissed without prejudice for failure to exhaust state remedies is not a 'second or successive' petition within the meaning of § 2244."). Thus, under *Camarano,* if a petition is dismissed for failure to exhaust, the petitioner is later free to file the petition again without seeking authorization to do so—and without having to comply with the AEDPA's limitations on the filing of successive petitions.

The district court denied Rodriguez's first habeas petition on April 17, 1995. Rodriguez moved for reconsideration, arguing for the first time that Mort provided ineffective assistance because he suffered from mental illness. Judgment denying both the petition and the motion to reconsider was entered on April 20. As to the motion, the court denied it on the merits, but stated that, "[i]n any event, this argument was not raised in state court and has not been exhausted." We affirmed the dismissal of the claim based on Mort's mental illness solely on the ground that it was unexhausted. *See Rodriguez v. Mitchell,* No. 95–2310, 1996 WL 80005, at *2 (2d Cir., Feb.23, 1996) (affirming dismissal because Rodriguez "has not raised in state court the significantly different

factual allegations that form the basis for the claim" and stating that "[w]e decline to review this claim because it is unexhausted"). Rodriguez then filed his first Rule 60(b) motion to vacate the judgment dismissing his habeas petition, and the district court denied the motion. We affirmed by summary order, noting that in our prior order "we had ruled . . . that the mental illness claim was unexhausted." *Rodriguez v. Mitchell*, No. 96–2534, 1997 WL 311801, at *1 (2d Cir., June 4, 1997).

Because Rodriguez's claim of ineffective assistance based on Mort's mental illness was dismissed for failure to exhaust state remedies and not on the merits, we conclude that under *Camarano*, he may file another petition raising this claim without complying with the AEDPA successive petition rules.

Rodriguez is therefore free to file a second habeas petition raising the ineffective assistance claim based on Mort's mental illness without obtaining our authorization to do so.

b) *Whether Rodriguez may file a second petition raising the Brady claims*

■ Rodriguez argues that application of the AEDPA successive petition rules to the *Brady* claims he seeks to raise in his second petition (and which he failed to raise in the first) would have an impermissible retroactive effect, since he filed the first petition prior to the effective date of the AEDPA.[5] We need not decide that

question because his successive petition relating to his *Brady* claim must be dismissed whether under AEDPA or under the standard that prevailed prior to the passage of AEDPA.

■ Rodriguez would not have been permitted to file a second habeas petition under the law that governed the filing of successive petitions at the time he filed his first petition in 1994, *see McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Under *McCleskey*, a petitioner seeking to file a second or successive petition raising a claim that he failed to include in his initial petition "must show cause for failing to raise it and prejudice therefrom." 499 U.S. at 494, 111 S.Ct. 1454. To establish cause, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim" in the prior petition—factors such as interference by officials or the unavailability of relevant facts. *Id.* at 493–94, 111 S.Ct. 1454 (internal quotation marks omitted). To establish prejudice, the petitioner "must show actual prejudice resulting from the errors of which he complains." *Id.* at 494, 111 S.Ct. 1454 (internal quotation marks omitted). He must establish, in other words, that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Femia v. United States*, 47 F.3d 519, 524 (2d Cir.1995) (quoting *United States v. Frady*, 456 U.S. 152, 170, 102

---

5. Respondents reply that this argument is foreclosed by our opinion in *Mancuso v. Herbert*, 166 F.3d 97 (2d Cir.), *cert. denied*, 527 U.S. 1026, 119 S.Ct. 2376, 144 L.Ed.2d 779 (1999), which they cite for the proposition that "Congress intended for [the AEDPA successive petition rules] to apply to second petitions . . . where the first petition was filed before the enactment of the AEDPA." It is true our language in *Mancuso* asserts this broad proposition, but our ruling in *Mancuso*

was not with respect to the argument here raised of impermissible retroactivity. The issue was whether the standard of "extraordinary circumstances" had been satisfied by a change in law resulting from the Supreme Court's opinion in *Stewart v. Martinez–Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). Whether *Mancuso* should be seen as disposing of the claim of impermissible retroactivity is not clear.

S.Ct. 1584, 71 L.Ed.2d 816 (1982)) (internal quotation marks omitted). Alternatively, if the petitioner fails to establish cause and prejudice, "the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey*, 499 U.S. at 494–95, 111 S.Ct. 1454. A fundamental miscarriage of justice occurs only in those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *Id.* at 494, 111 S.Ct. 1454.

■ Rodriguez's two *Brady* claims, neither of which he included in his first petition, are that the prosecution improperly withheld Santiago's statement and the Nieves polygraph report. As cause for failing to include these claims in his first petition, he argues, first, that he did not know at the time he filed the first petition that "those materials were all that he would ever have" and that he was diligently pursuing additional materials. The allegation fails to satisfy the standard. Second, Rodriguez claims that the "state bureaucracy" frustrated his efforts to obtain further documentation and therefore that his failure to include the *Brady* claims in the first petition must be ascribed to the interference of officials—a factor expressly recognized in *McCleskey* as cause. But the claim is wholly unsubstantiated. The mere fact that bureaucracy is slow and cumbersome is not an interference of state officials. Third, Rodriguez argues that his *Brady* claims were not exhausted in the New York courts at the time he filed his first habeas petition and that, under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a petition containing both exhausted and unexhausted claims would have been dismissed in its entirety. Rod-

riguez, however, was not compelled to file his first habeas petition when he did. Since he could have waited until he had exhausted state remedies, his failure to exhaust this *Brady* claim at the time of his first petition does not constitute cause excusing his failure to include the *Brady* claim in the first petition.

■ Nor did Rodriguez suffer prejudice from the failure of the prosecution to disclose Santiago's statement and the Nieves polygraph report. Rodriguez claims that Santiago's statement about what co-defendant Donnes told her was exculpatory because it suggested that Rodriguez was "shocked" by the fact that co-defendant Latif began shooting and that Rodriguez took no part in the shootings. Rodriguez, however, would have been barred by the hearsay rule from introducing Santiago's statement into evidence, and he could not have called Donnes to testify because Donnes was missing. Most importantly, it is highly likely that Rodriguez would have been convicted even if he had been able to introduce Santiago's statement, because he had admitted to the police that he knew before going to the pharmacy that Latif had a gun and planned to rob the store and kill the pharmacist. We conclude that Rodriguez fails to show actual prejudice from the prosecution's failure to disclose Santiago's statement.

■ Rodriguez claims that he was prejudiced by the prosecution's failure to disclose the Nieves polygraph report because the report "would have provided ammunition for a successful cross-examination" of Nieves, by suggesting that she "was concerned about her own exposure and . . . that she cooperated with the prosecution on that account." However, even if the jury decided on the basis of such a cross-examination to discount Nieves's testimony, it still would have had Rodriguez's admissions, which were ample basis for

conviction. In addition, if Rodriguez had sought to cross-examine Nieves on the basis of the polygraph report, the prosecution would have argued that the report was fraudulent—as it later successfully did when Rodriguez moved in state court to vacate his conviction. Thus, Rodriguez cannot show that he was actually prejudiced by the prosecution's failure to disclose the polygraph report.

█ Finally, Rodriguez cannot establish that a fundamental miscarriage of justice would result if his failure to raise the *Brady* claims in the first petition were not excused. Given his admissions that he went to the pharmacy knowing full well that Latif was armed and planned to commit robbery and kill the pharmacist, there is no miscarriage of justice.

Because Rodriguez can establish neither cause and prejudice, nor a fundamental miscarriage of justice, he would not be permitted under *McCleskey* to file a second petition raising the *Brady* claims.

## CONCLUSION

As to the ineffective assistance claim based on his trial lawyer's mental illness, Rodriguez may file a second habeas petition raising this claim without our authorization. As to the *Brady* claims based on the Santiago statement and the Nieves polygraph report, authorization to file a second petition raising these claims is denied.