TJOFLAT, Circuit Judge,
specially concurring in part and dissenting in part.[1]
I.
Federal Rule of Civil Procedure 60(b) authorizes the district courts to relieve a party to a civil action from the force of a final judgment on the following grounds:
(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence [the party] could not have ... discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
Additionally, under what has been labeled Rule 60(b)’s “savings clause,”[2] the district courts retain the power “to entertain an independent action to relieve a party from a judgment, order, or proceeding ... or to set aside a judgment for fraud upon the court.”
Today, the majority today holds that, with the exception of the ground provided by Rule 60(b)(3),[3] the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214, precludes the district courts of the Eleventh Circuit from entertaining Rule 60(b) motions filed by prisoners who seek the vacation of the district court’s judgment denying them habeas corpus relief.[4] *1288 To obtain relief on any of the remaining grounds provided by the Rule (i.e., Rule 60(b)(1), (2), and (4)-(6)), the petitioner must apply to this court pursuant to 28 U.S.C. § 2244(b)(3) for leave to file his Rule 60(b) motion.[5] The majority treats any motion based on one or more of those grounds as a second or successive habeas petition (“SSHP”)[6] even if the motion contains no constitutional claim at all. The majority also holds that before the petitioner can appeal the denial of a Rule 60(b)(3) motion, either the district court or this court must issue a certificate of ap-pealability (“COA”) pursuant to 28 U.S.C. § 2253.
I respectfully dissent from these two holdings because the rationale supporting them is fundamentally flawed. Aside from this, I am convinced that the implementation of the majority’s holdings will unnecessarily add to the workload of this court.
This opinion is organized as follows. Part II addresses the majority’s first holding, which treats all Rule 60(b) motions— *1289 with the exception of those filed under Rule 60(b)(3) — as SSHPs. Part III addresses the majority’s second holding, which requires the issuance of a COA before a petitioner can appeal the district court’s denial of a Rule 60(b)(3) motion. Part IV describes the practical implications of the majority’s holdings. Part V suggests the dispositions we should make in the three consolidated appeals before us.
II.
By treating all Rule 60(b) motions — except those filed under Rule 60(b)(3) — as SSHPs, the majority misunderstands the history and purpose of Rule 60(b), fails to appreciate the functional difference between an SSHP and a Rule 60(b) motion, and misapplies the Supreme Court’s decision in Calderon v. Thompson, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). I address these points in turn and then suggest the course we should follow.
A.
At common law, “the term of court was decisive in determining whether or not the district court had power over its final judgments and decrees.” Note, History and Interpretation of Federal Rule 60(b) of the Federal Rules of Civil Procedure, 25 Temple L.Q. 77, 78 (1951) [hereinafter “Note, History.”]. During the term, a court “had full power to vacate or revise [its] judgments.” Commentary, Effect of Rule 60b on Other Methods of Relief from Judgment, 4 Fed. Rules Serv. 942, 942 (1941). After the term, a party could obtain relief from a judgment only through four types of “remedial devices”: (1) one of the ancient writs, i.e., “audita querela, coram no-bis, coram vobis, bill[s] of review, and bill[s] in the nature of bills of review”; (2) an “[independent action[ ] for relief, based on extrinsic fraud, mistake, and accident”; (3) the “[inherent power of the court to modify judgments”; and (4) the “[p]ower [of the court] to disregard void judgments.” Note, Federal Rule 60(b): Relief from Civil Judgments, 61 Yale L.J. 76, 76 n. 3 (1952).
Each of the ancient writs permitted relief in different scenarios. Audita querela, a common law writ, typically “afford[ed] relief to a judgment debtor against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment or the issue of the execution.” 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2867, at 394 (Civil 2d ed.1995). Coram nobis and co-ram vobis, both equitable in nature, sought to remedy “mistakes of fact, not appearing on the face of the record, and but for which the judgment would not have been entered.” Commentary, supra, at 942-43. If the judgment under attack issued from the King’s Bench, the former writ was appropriate; if it issued from any other court, the latter was used. Black’s Law Dictionary 338 (7th ed.1999). A bill of review in equity would lie upon any of four grounds: (1) “error of law apparent upon the record,” (2) “newly discovered evidence,” (3) “the occurrence of new matter or new facts after the entry of the decree which make its enforcement inequitable,” or (4) “fraud in procuring the decree.” James Wm. Moore & Elizabeth B.A. Rogers, Federal Relief from Civil Judgments, 55 Yale L.J. 623, 677-79 (1946).
Despite their formal distinctions, however, the ancient writs as a practical matter had confusing and “uncertain boundaries.” Klapprott v. United States, 335 U.S. 601, 614, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). For example, while the usual rule was that audita querela lay only for matters arising subsequent to judgment, many courts granted relief under this writ for matters arising before judgment, thereby blurring the distinction between audita querela and *1290 coram nobis (or vobis). 12 James Wm. Moore et al, Moore’s Federal Practice § 60 App. 105, at 60 App.-29 (3d ed.2003). The Supreme Court in Klapprott recognized that “few courts ever ... agreed as to what circumstances would justify relief under these old remedies.” 335 U.S. at 614, 69 S.Ct. at 390.
The enactment of the Federal Rules of Civil Procedure in 1938 was, in part, an attempt to eliminate the confusion caused by the inconsistent application of these ancient writs. In its original form, Rule 60(b) stated:
On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, or (2) to set aside within one year, as provided in Section 57 or the Judicial Code, U.S.C., Title 28, § 118, a judgment obtained against a defendant not actually personally notified.
Moore, supra, § 60 App. 10[1], at 60 App.-2. On its face, Rule 60(b) seemed progressive; parties could seek relief from judgments without resort to the ancient writs and without regard to the term of court, subject to the six-month limitations period. But many courts stripped the Rule of its progressivity through traditional common law devices. Some courts, for example, granted motions for relief filed more than six months after final judgment, often based upon their “ ‘inherent power’ to control judgments where the ‘term’ had not expired.” Note, History, supra, at 78. Other courts “read into [Rule 60(b) ] the nebulous writs that had traditionally provided post-term relief.” Id.
This problem did not go unnoticed. In 1946, Rule 60(b) was substantially amended to read as it does today.[7] In addition to providing six grounds for relief, see supra Part I,
th[e] rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.
Fed.R.Civ.P. 60(b).
The drafters of modern Rule 60(b) were unconcerned with “the substantive law as to the grounds for vacating judgments.” Fed.R.Civ.P. 60 advisory committee’s note (1946). Rather, they sought to create a comprehensive procedural scheme, one that would “remove the uncertainties and historical limitations of ancient remedies while preserving all of the various kinds of relief that they afforded.” 11 Wright, Miller & Kane, supra, § 2851, at 227. The Rule accomplished three tasks. First, it set different time limits for articulating different grounds of relief. Second, the Rule abolished the ancient writs, “shrouded [as they were] in ancient lore and mystery.” Advisory committee’s note, supra. Third, Rule 60(b) established four devices *1291 for parties to seek relief from civil judgments:
1. Rule 60(b) motions. A party may seek relief from a judgment upon any ground enumerated in the Rule.
2. Independent Actions. A party may initiate a new action to seek relief from a judgment. It may bring this action in any district court, not just the one that rendered the judgment from which relief is sought. 11 Wright, Miller & Kane, supra, § 2851, at 229.
3. Statutory procedures. A court may grant relief from a judgment without resort to Rule 60(b) as authorized by statute.[8]
4. Inherent powers. Rule 60(b) expressly permits a district court “to set aside a judgment for fraud upon the court.”
The best explanation of the interrelationship of Rule 60(b) and the independent actions preserved by the Rule’s savings clause is contained in the Fifth Circuit’s opinion in Bankers Mortgage Co. v. United States, 423 F.2d 73, 78-79 (5th Cir.1970):[9]
The second procedure contemplated by Rule 60(b) is an independent action to obtain relief from a judgment, order, or proceeding. The ... saving clause specifically provides that 60(b) does not limit the power of the court to entertain such an action. It is important to emphasize “independent action,” as used in this clause, was meant to refer to a procedure which has been historically know simply as an independent action in equity to obtain relief from a judgment. This action should under no circumstances be confused with ancillary common law and equitable remedies or their modern substitute, the 60(b) motion.
When a court grants relief from a judgment or decree by a new trial or rehearing, or by one of the ancillary common law or equitable remedies or their modern substitute, a motion, it is exercising a supervisory power of that court over its judgment; but the original bill, or independent action, to impeach for fraud, accident, mistake or other equitable ground is founded upon an independent and substantive equitable jurisdiction.
If the litigant’s “right to make a [Rule 60(b) ] motion is lost by the expiration of the time limits fixed in these rules, the only procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action.” Id. at 81 n. 13.
B.
In part because it failed to appreciate this history, the majority overlooks the important distinctions between the motions and independent actions Rule 60(b) authorizes and SSHPs. Like the ancient procedures it replaced, Rule 60(b) was never *1292 intended to permit parties to relitigate the merits of claims or defenses, or to raise new claims or defenses that could have been asserted during the litigation of the case. Rather, the aim of Rule 60(b) was to allow a district court to grant relief when its judgment rests upon a defective foundation.
As applied in the habeas context, the “factual predicate [of a Rule 60(b) motion] deals primarily with some irregularity or procedural defect in the procurement of the judgment denying habeas relief.” Rodwell v. Pepe, 324 F.3d 66, 70 (1st Cir.2003). The same is true with respect to an independent action brought under the Rule’s savings clause. See Buell v. Anderson, 48 Fed.Appx. 491, 498 (6th Cir.2002) (explaining the elements of an independent action, all of which concern the integrity of the habeas judgment); Hess v. Cockrell, 281 F.3d 212, 217 (5th Cir.2002) (same). A true Rule 60(b) motion “seek[s] relief from a federal court’s final order entered in a habeas proceeding on one or more of the grounds set forth in” the Rule. Abdur’Rahman v. Bell, 537 U.S. 88, 94, 123 S.Ct. 594, 597, 154 L.Ed.2d 501 (2003) (Stevens, J., dissenting). Neither proceeding constitutes a collateral attack on the underlying conviction or sentence.
An SSHP is a different species. Like a first petition for a writ of habeas corpus, an SSHP is a collateral attack upon the applicant’s conviction or sentence. After AEDPA, an applicant may seek SSHP relief by asserting “(1) claims that ‘rel[y] on a new rule of constitutional law,’ and (2) claims that rely on a rule of constitutional law and are based on evidence that ‘could not have been discovered previously through the exercise of due diligence’ and would establish the petitioner’s factual innocence.” Mobley v. Head, 306 F.3d 1096, 1100-01 (11th Cir.2002) (vacated panel opinion) (Tjoflat, J., dissenting) (quoting 28 U.S.C. § 2244(b)(2)). Thus, SSHPs are concerned entirely with “alleged violations of federal rights” that occurred during the proceedings resulting in the petitioner’s conviction or sentence. Rodriguez v. Mitchell, 252 F.3d 191, 199 (2d Cir.2001). As I noted in my dissent from the panel opinion in Mobley,
[n]either of [the] types of claims [cognizable under section 2244(b)(2) ] challenges the district court’s previous denial of relief under 28 U.S.C. § 2254. Instead, each alleges that the contextual circumstances of the proceeding have changed so much that the petitioner’s conviction or sentence now runs afoul of the Constitution.
Mobley, 306 F.3d at 1101 (Tjoflat, J., dissenting).
Thus, “the difference [between an SSHP and a Rule 60(b) motion] is defined by the relief that the applicant seeks.” Abdur’Rahman, 537 U.S. at 94, 123 S.Ct. at 597 (Stevens, J., dissenting). An SSHP,
like all habeas corpus petitions, is meant to remedy constitutional violations (albeit ones which arise out of facts discovered or laws evolved after an initial ha-beas corpus proceeding), while a Rule 60(b) motion is designed to cure procedural violations in an earlier proceeding — here, a habeas corpus proceeding — that raise questions about that proceeding’s integrity.
Mobley, 306 F.3d at 1101 (Tjoflat, J., dissenting). By granting an SSHP, the district court “invalidates]” the conviction or sentence. Rodriguez, 252 F.3d at 198. By granting a Rule 60(b) motion, the court “merely reinstate^] the previously dismissed petition for habeas, opening the way for further proceedings seeking ultimately to vacate the conviction.” Id.
C.
In defense of its holding that all Rule 60(b) motions — except motions seeking Rule 60(b)(3) relief — are SSHPs that can *1293 not be filed in the district court without leave of this court obtained pursuant to § 2244(b)(3)(A), the majority relies upon the Supreme Court’s decision in Calderon.
In that case, the petitioner moved the court of appeals to recall its mandate denying habeas relief. Calderon, 523 U.S. at 545-46, 118 S.Ct. at 1496.[10] The panel of the court that decided the petitioner’s appeal denied his motion. The court thereafter convened en banc to hear oral argument on the question of “whether the panel decision ... would result in a fundamental miscarriage of justice.” Id. at 547, 118 S.Ct. at 1497. After hearing argument, the en banc court, acting sua sponte, recalled the court’s mandate and affirmed the district court’s decision. Id. at 548-49, 118 S.Ct. at 1497.
The Supreme Court reversed. Acknowledging that in some circumstances a court of appeals has “inherent power to recall [its] mandate[ ],” id. at 549, 118 S.Ct. at 1498, the Court concluded that the en banc court’s exercise of such power in this case constituted an abuse of discretion, id. at 566, 118 S.Ct. at 1506. As for the State’s argument that AEDPA barred the court from recalling the mandate, the Court held that AEDPA had no application because the court recalled the mandate on its own initiative, not on the petitioner’s motion. Id. at 554, 118 S.Ct. at 1500. Nonetheless, the Court had this to say about AEDPA’s application when a court of appeals is considering whether to grant a habeas petitioner’s motion to recall its mandate:
In a § 2254 case, a prisoner’s motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2). If the court grants such a motion, its action is subject to AEDPA irrespective of whether the motion is based on old claims (in which case § 2244(b)(1) would apply) or new ones (in which case § 2244(b)(2) would apply).
Id. at 553, 118 S.Ct. at 1500.
I concur in the majority’s view that once a court of appeals issues its mandate in a habeas case, a petitioner’s Calderon-type motion to recall the mandate, which asks the court of appeals to entertain a new claim or revisit an old claim, constitutes an SSHP as defined by AEDPA.[11] I further observe that Calderon, in application, yields this result: the petitioner’s motion *1294 to recall the mandate must be denied. If the motion merely asks the court to revisit its disposition of the claims the petitioner had (unsuccessfully) litigated, § 2244(b)(1) requires that the court deny the motion.[12] If the motion raises new claims, the court will deny it under the time-honored rule that a court of appeals will not consider claims not seasonably presented to the district court in the first instance.[13]
Calderon does not speak to the authority of the district court to grant a habeas petitioner relief under Rule 60(b). The majority believes that it does by analogy.[14] An analogy may appear at first blush, but, to me at least, it disappears when one compares recalling an appellate mandate with the collateral attacks provided by Rule 60(b) and the independent actions the Rule preserves under its savings clause.
By recalling its mandate, the court of appeals may reexamine its decision. Calderon permits the court to recall its mandate for such purpose if it does so on its own initiative. The fact that Calderon bars the court from recalling its mandate (in a habeas case) on the petitioner’s motion does not alter the fact that, once the mandate is recalled, the court is in the same position it occupied before the mandate issued. When considering a motion to recall the mandate similar to that addressed in Calderon, the court of appeals is not entertaining a collateral attack that questions the integrity or legitimacy of its judgment. See supra note 11. Instead, drawing on the same record it had before it when it rendered its decision, the court is simply reconsidering whether to adhere to its decision or come down another way.
The district courts lack the broad power the courts of appeals possess to recall their judgments. If it does not receive a motion filed pursuant to Rules 50(b), 52(b), 59(a) or (e), or act sum sponte under Rule 59(d) of the Federal Rules of Civil Procedure no later than “10 days after the entry of judgment,” a district court loses jurisdiction to revisit the claims and defenses the judgment resolved.[15] As explained in Part *1295 II.A, supra, Rule 60(b) and the independent actions its savings clause preserves give the court the power to set aside a judgment whose integrity is lacking. What Rule 60(b) and these independent actions do not provide is a means for litigants to obtain the district court’s reconsideration of the claims and defenses its judgment adjudicated. See Am. Bankers Ins. Co. v. Northwestern Nat’l Ins. Co., 198 F.3d 1332, 1338 (11th Cir.1999) (“[T]he law is clear that Rule 60(b) may not be used to challenge mistakes of law which could have been raised on direct appeal[,]” the implication being that all that the Rule provides is a vehicle for attacking the integrity of the district court’s judgment); Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1552 (11th Cir.1985) (“[T]he plaintiff cannot use an independent action as a vehicle for the relitigation of issues.”); Bankers Mortgage Co., 423 F.2d at 79 (5th Cir.1970) (“The independent action can not be made a vehicle for the relitigation of issues.”); Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 60 (2d Cir.1984) (“[Litigants] may not use proceedings seeking relief from or modification of a judgment under F.R. Civ. P. 60 simply to relitigate matters settled by the original judgment....”); Kustom Signals, Inc. v. Applied Concepts, Inc., 247 F.Supp.2d 1233, 1235 (D.Kan.2003) (“Like a motion to reconsider, a motion under Rule 60(b) is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed.”).
What the foregoing discussion establishes, I believe, is that a legally significant analogy cannot be drawn between a motion to recall an appellate mandate and a motion or independent action brought under Rule 60(b). None of the motions or independent actions authorized by Rule 60(b) should assert that the petitioner’s underlying criminal conviction or sentence is infirm on the basis of a constitutional claim that was or was not included in the habeas petition the petitioner litigated to final judgment in the district court. If such motions or independent actions present a constitutional claim, they must be dismissed unless the court of appeals has granted the petitioner leave to file the same in district court. The motions to recall the mandate discussed in Calderon, by comparison, seek the adjudication of constitutional claims; they do not constitute collateral attacks on the integrity of the court of appeals’s judgment.[16] Hence, they differ from true Rule 60(b) motions and must be denied.
D.
Having distinguished between SSHPs and Rule 60(b) motions, I nonetheless share the majority’s general concern that petitioners will disguise the former as the latter to avoid AEDPA’s restrictions. We must craft a holding that curtails this abuse.
We do not write on a blank slate here, as virtually all of our sister circuits have addressed this issue.[17] Some circuits have held that all Rule 60(b) motions are SSHPs, regardless of the nature of the claims presented. See Lopez v. Douglas, 141 F.3d 974, 975 (10th Cir.1998) (holding without extended discussion that the peti *1296 tioner’s Rule 60(b) motion was an SSHP under AEDPA); Gee v. Shillinger, 1998 WL 43155, *1-*2, 1998 U.S.App. LEXIS 2644, *3-*4 (10th Cir.1998) (holding, without specifying exceptions, that Rule 60(b) motions are SSHPs under AEDPA); McQueen v. Scroggy, 99 F.3d 1302, 1335 (6th Cir.1996) (holding in a pre-AEDPA context that “a Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition and therefore is subject to a cause and prejudice analysis”). The Second Circuit, on the other hand, appears to have held that Rule 60(b) motions should never be treated as SSHPs. Rodriguez, 252 F.3d at 198 (“We now rule that a motion under Rule 60(b) to vacate a judgment denying habeas is not a second or successive habeas petition and should therefore be treated as any other motion under Rule 60(b).”).[18]
Most of our sister circuits, however, have come down somewhere in the middle, holding that district courts may recharac-terize Rule 60(b) motions as SSHPs under some circumstances. These circuits fall into two subsets. The first subset consists of courts that have declined to hold that all Rule 60(b) motions are SSHPs, but that have not articulated a rule for distinguishing these devices.[19] See Boyd v. United States, 304 F.3d 813, 814 (8th Cir.2002) (directing district courts to “conduct[] a brief initial inquiry to determine whether the allegations in the Rule 60(b) motion in fact amount to a second or successive collateral attack”); Thompson v. Calderon, 151 F.3d 918, 921 & n. 3 (9th Cir.1998) (“We do not foreclose the possibility [that] a 60(b) motion filed after denial of an initial petition for habeas corpus would not have to comply with the AEDPA’s successive petition requirements.... [A] bright line rule equating all 60(b) motions with successive habeas petitions would be improper.”). The second subset consists of courts that have developed various, if general, rules for governing Rule 60(b) motions. See United States v. Winestock, 340 F.3d 200, 206 (4th Cir.2003) (“[District courts must treat Rule 60(b) motions as successive collateral review applications when failing to do so would allow the applicant to ‘evade the bar against relitigation of claims presented in a prior application or the bar against litigation of claims not presented in a prior application.’ ” (citation omitted)); Rodwell, 324 F.3d at 70 (“When the motion’s factual predicate deals primarily with the constitutionality of the underlying state conviction or sentence, then the motion should be treated as a second or successive habeas petition. This situation should be distinguished from *1297 one in which the motion’s factual predicate deals primarily with some irregularity or procedural defect in the procurement of the judgment denying habeas relief. That is the classic function of a Rule 60(b) motion.”); Dunlap v. Litscher, 301 F.3d 873, 875 (7th Cir.2002) (“It is only when Rule 60(b) conflicts with AEDPA that it is unavailable to a prisoner.”).
The majority today places our court near the middle ground. But rather than adopting a flexible rule that would permit district courts to honor AEDPA’s aims without punishing true Rule 60(b) mov-ants, the majority specifies a hard-and-fast exception to its holding that all Rule 60(b) motions are SSHPs: motions to remedy fraud upon the court under Rule 60(b)(3).
The majority is somehow convinced that the only way a habeas petitioner who seeks Rule 60(b) relief will be able to avoid AEDPA’s restrictions on SSHPs is by asserting that the district court’s judgment was fraudulently obtained. To be sure, “fraud, ... misrepresentation, or other misconduct [perpetrated by the respondent]” is one valid ground for seeking relief from a habeas judgment under Rule 60(b) without implicating § 2244’s requirements, as many of our sister circuits have recognized. See Winestock, 340 F.3d at 207; Dunlap, 301 F.3d at 876; Rodriguez, 252 F.3d at 199; Thompson, 151 F.3d at 921 n. 3. Obviously, such misconduct is not the only reason to doubt the legitimacy of a habeas judgment.
Rather than follow the majority’s approach, we should recognize that Rule 60(b) survives in AEDPA’s wake and fashion a holding that accounts for the essential differences between Rule 60(b) motions and SSHPs. In this vein, I would adopt substantially the First Circuit’s solution to our problem:
The inquiry must proceed case by case. The [district] court must examine the factual predicate set forth in support of a particular motion. When the motion’s factual predicate deals primarily with the constitutionality of the underlying state [or federal] conviction or sentence, then the motion should be treated as a second or successive habeas petition. This situation should be distinguished from one in which the motion’s factual predicate deals primarily with some irregularity or procedural defect in the procurement of the judgment denying habeas relief. That is the classic function of a Rule 60(b) motion, and such a motion should be treated within the usual confines of Rule 60(b).
Rodwell, 324 F.3d at 70 (citation omitted); cf. Lazo v. United States, 314 F.3d 571, 573 (11th Cir.2002) (vacated panel opinion) (concluding that Lazo’s purported Rule 60(b) motion was the “functional equivalent of a successive § 2255 motion”). To further guide the district courts, I would repeat the observation I made in my dissent from the Mobley panel:[20]
*1298 [I]f a petitioner[ ] who already has been denied federal habeas corpus relief files a motion that presents new constitutional claims to the district court, this motion should be considered a “second or successive” habeas corpus petition— even if the petitioner calls it a Rule 60(b) motion. Likewise, if the petitioner [br]ought a “second or successive” habe-as corpus petition to raise questions about the integrity of a prior habeas corpus proceeding ... then the court should review the filing under the standards for Rule 60(b) motions and not under the strictures of 28 U.S.C. 2244(b)(2).
306 F.3d at 1101-02 (Tjoflat, J., dissenting); accord Winestock, 340 F.3d at 207 (“[A] brand-new, free-standing allegation of constitutional error in the underlying criminal judgment will virtually always implicate the rules governing successive applications. Similarly, new legal arguments or proffers of additional evidence will usually signify that the prisoner is not seeking relief available under Rule 60(b) but is instead continuing his collateral attack on his conviction or sentence.” (citations omitted)). If the court finds that the motion states a valid ground for relief under Rule 60(b), it may entertain the motion. If it instead determines that the filing is an SSHP parading as a Rule 60(b) motion, then § 2244 applies.[21] In the latter case, the district court may not entertain the SSHP without our authorization. 28 U.S.C. § 2244(b)(3)(A). If the petitioner has not obtained our authorization, the district court must reject his motion for lack of subject matter jurisdiction. See Winestock, 340 F.3d at 208-09 (vacating the district court’s denial of the petitioner’s purported Rule 60(b) motion and remanding with the instruction to dismiss for lack of jurisdiction); Rodwell, 324 F.3d at 73 (affirming the district court’s dismissal of an SSHP dressed as a Rule 60(b) motion); Dunlap, 301 F.3d at 876-77 (holding that the district court erred in failing to recharacterize a Rule 60(b) motion as an SSHP and reversing with the instruction to dismiss for lack of jurisdiction); United States v. Rich, 141 F.3d 550, 554 (5th Cir.1998) (affirming the district court’s dismissal of the petitioner’s filing for lack of jurisdiction).
Although “this test [would not] operate with mathematical precision,” Rodwell, 324 F.3d at 71, it elevates substance over form and satisfies the independent aims of AEDPA and Rule 60(b). Like the First Circuit, I am “confident that ... the district courts [would] be able to sift wheat from chaff without undue difficulty.” Id.
III.
Pursuant to 28 U.S.C. § 2253(c)(1),
Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.[22]
*1299 After reducing Rule 60(b)’s scope to claims of fraud, the majority holds that § 2253 requires habeas petitioners to obtain a COA before appealing the denial of Rule 60(b)(3) relief. I cannot ascribe to this holding because § 2253’s plain language discloses no such requirement. Neither can I ascribe to the majority’s reliance on the decisions in other circuits that might appear to, but do not, support its position.
A.
Courts of appeals have jurisdiction “of appeals from all final decisions of the district courts....” 28 U.S.C. § 1291. A litigant faced with an unfavorable district court judgment may make a timely appeal of that judgment and may also file a Rule 60(b) motion for relief with the district court either before or after filing his appeal. See Stone v. Immigration and Naturalization Serv., 514 U.S. 386, 401, 115 S.Ct. 1537, 1547, 131 L.Ed.2d 465 (1995). “The denial of the [Rule 60(b) ] motion is appealable as a separate final order....” Id. Thus, an order adjudicating a Rule 60(b) motion, in addition to a final judgment adjudicating the case as a whole, is an appealable, final decision.
Although our appellate jurisdiction extends to all final decisions, § 2253’s COA requirement does not. As a textual matter, § 2253 requires a COA to appeal only one final order in a habeas corpus proceeding, not all orders. See 28 U.S.C. § 2253(c)(1) (providing that the COA requirement applies to “the final order” in proceedings attacking state or federal convictions or sentences (emphasis added)).
In habeas cases involving more than one appealable order, such as orders disposing of Rule 60(b) motions or other post-judgment motions, § 2253’s requirement of a COA as to the appeal of just one final order clearly extends to the petitioner’s efforts, if any, to appeal the court’s final judgment denying him habeas relief. The district court’s judgment on the habeas petition is seemingly the only “final decision” that could deny the petitioner’s constitutional challenge to his conviction or sentence. Therefore, that judgment is the only decision that § 2253(c)(2) seems to address; it is the only final order that could serve as the basis for the petitioner’s “substantial showing of the denial of a constitutional right[,]” the showing he must make to obtain the COA. In contrast to judgments denying habeas relief, final orders denying a Rule 60(b) motion do not adjudicate a constitutional challenge to the movant’s conviction or sentence. They simply state that the district court will not exercise its discretion to set aside the final judgment it entered.[23]
I agree with the majority’s statement that the word “the” can sometimes be read in the plural. In certain circumstances, singular terms can be construed in the plural. See 1 U.S.C. § 1 (“[U]nless the context indicates otherwise[,] words importing the singular include and apply to several persons, parties, or things....”). “But obviously this rule is not one to be applied except where it is necessary to carry out the evident intent of the statute.” First Nat’l Bank in St. Louis v. Missouri, 263 U.S. 640, 657, 44 S.Ct. 213, 215, 68 L.Ed. 486 (1924) (interpreting the predecessor rule that “words importing the singular number may extend and be applied to several persons or things”); see also Toy Mfrs. of America, Inc. v. Consumer *1300 Prods. Safety Comm’n, 630 F.2d 70, 74 (2nd Cir.1980) (holding that 1 U.S.C. § 1 does not apply “except where it is necessary to carry out the evident intent of the statute”). AEDPA evinces no legislative intent to apply the COA requirement to more than one order. Nor does it evince legislative intent to apply the § 2253(c)(2) requirement of a “substantial showing” to an order that does not determine whether the petitioner has suffered the denial of a constitutional right. While AEDPA clearly limits appeals of the denial of habeas relief, there is nothing in the text of the Act that narrows the reach of Rule 60(b) or the independent collateral attacks the Rule authorizes. Thus, interpreting “the” in the plural would be improper in this context, and § 2253 must apply to one final order: the district court’s final judgment on the habeas petition.
B.
I respectfully decline to join in the majority’s reliance on the decisions of our sister circuits for the proposition that the COA requirement of § 2253 extends to appeals of the denial of Rule 60(b) relief. By and large, the courts, in reaching these decisions, simply assumed that § 2253 applies in the Rule 60(b) context. Moreover, most of these cases involve obvious misuses of the Rule and are therefore inappo-site to circumstances involving true Rule 60(b) motions. See Rutledge v. United States, 230 F.3d 1041, 1052-53 (7th Cir.2000) (considering an appeal from the denial of a Rule 60(b) motion based on an ineffective assistance of counsel claim that the petitioner “should have raised ... in his § 2255 motion”); Morris v. Horn, 187 F.3d 333, 343 (3d Cir.1999) (“What [the habeas petitioner] is attempting to raise as a Rule 60(b) motion is in fact what he should have brought as an appeal” from the district court’s dismissal of his habeas petition for failure to exhaust state remedies.); Zeitvogel v. Bowersox, 103 F.3d 56, 57 (8th Cir.1996) (refusing to grant a COA to review the denial of the petitioner’s purported Rule 60(b) motion because the motion merely presented a constitutional claim, ineffective assistance of counsel, that the petitioner had previously raised in a motion for leave to file an SSHP).[24] I suggest that a fair reading of the opinions in these cases indicates that none of the motions at issue was a true Rule 60(b) motion.
Langford v. Day, 134 F.3d 1381, 1382 (9th Cir.1998), also relied on by the majority, remains as a possible outlier. In that case, the petitioner, Langford, was convicted of capital murder by a Montana court and sentenced to death. At the time sentence was imposed, Montana law prescribed hanging or lethal injection as the means of execution. The trial court allowed the petitioner to choose the means of execution, and he chose hanging. In challenging his sentence on direct appeal and on federal habeas corpus, the petitioner unsuccessfully claimed that hanging violated the Eighth Amendment. Prior to the date set for his execution, “the Montana legislature abolished hanging, leaving only lethal injection as a means of execution.” Id. at 1382. The petitioner thereafter filed a Rule 60(b) motion in the district court, alleging that this change in Montana law authorized the court to revisit its judgment denying his petition for habeas corpus relief. The court denied his motion, and the petitioner filed a notice of appeal.
The court of appeals interpreted its pre-AEDPA precedent, Lynch v. Blodgett, 999 F.2d 401, 402-03 (9th Cir.1993), to preclude it from entertaining a petitioner’s *1301 appeal absent a certificate of probable cause (the COA’s pre-AEDPA analog). In the court’s view, AEDPA required a COA in all circumstances in which a certifícate of probable cause was previously required. Because the petitioner could obtain neither a COA nor a certificate of probable cause, the court did not decide whether AEDPA or pre-AEDPA law applied.[25] In other words, the denial of a meritorious constitutional claim was required in either case, and petitioner failed to show this. Langford, 134 F.3d at 1382.
The Ninth Circuit’s decision in Lynch, the basis for Langford’s result, relied on this circuit’s decision in Lindsey v. Thigpen, 875 F.2d 1509, 1512 (11th Cir.1989) (per curiam). Lindsey, however, is inap-posite to Langford and to the three cases we decide today. First, in Lindsey, a pre-AEDPA case, we had no opportunity to consider AEDPA’s SSHP restrictions. Second, the petitioner in Lindsey did not file a true Rule 60(b) motion, even though he labeled it as such. The petitioner alleged in his motion, which challenged the constitutionality of his death sentence, that (1) “the district court should reconsider his claim regarding the ‘especially heinous, atrocious or cruel’ aggravating factor in light of [Maynard v.] Cartwright[, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) ]”; and (2) “the trial judge’s override of the jury’s recommendation of life imprisonment violated the sixth amendment....” Lindsey, 875 F.2d at 1511. Because his filing was really an SSHP in Rule 60(b)’s clothing, the petitioner would today have to obtain leave of this court under § 2244(b)(3) before presenting the SSHP to the district court.[26]
In Langford, 134 F.3d at 1382, by contrast, at least in the Ninth Circuit’s view, the petitioner’s so-called Rule 60(b) motion “sought relief from a judgment of the district court denying Langford’s petition for habeas corpus....”[27] It did not assert constitutional claims attacking his underlying conviction or sentence. Consequently, his motion was not an SSHP, and no COA should have been required to appeal its denial. Ultimately, the Langford court made the same error our panel made in Mobley: it failed to comprehend that Lindsey and cases like it are limited to misuses of Rule 60(b).
IV.
Before suggesting the dispositions the court should make in these consolidated *1302 appeals, I think it useful to discuss the practical implications of the majority holdings. To recap, the majority holds, first, that (with the exception of a motion filed under Rule 60(b)(3)) to obtain relief under Rule 60(b), a petitioner must apply to this court for leave to file his motion. In doing so, he must satisfy the requirements of § 2244(b)(2), meaning that:
(A) ... the claim [set forth in his motion] relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense.
Thus, the majority separates Rule 60(b) motions into two groups: first, Rule 60(b)(3) motions, which are to be presented to the district court; and second, Rule 60(b)(1), (2), and (4)-(6) motions, which the majority treats as SSHPs that must be presented to this court as § 2244(b)(2) applications for leave to seek relief in the district court. The majority next holds that before the petitioner can appeal the district court’s denial of his Rule 60(b)(3) motion, he must obtain a COA. This means that his application for a COA must make “a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). Given these holdings, I now illustrate what Rule 60(b) litigation will look like from now on.
With respect to the Rule 60(b)(3) motions, the majority opinion does not come into play until the district court has denied relief and the petitioner seeks to appeal the denial. The petitioner cannot appeal unless and until he obtains a COA by making the requisite § 2253(c)(2) “substantial showing of the denial of a constitutional right.” With respect to motions seeking relief under Rule 60(b)(1), (2), and (4)-(6), the majority opinion comes immediately into play. The petitioner must apply to this court for leave to proceed in the district court; to obtain such leave, he must satisfy the requirements of § 2244(b)(2)(A), (B), quoted above. In short, whether the petitioner is seeking relief on these Rule 60(b) grounds or under Rule 60(b)(3), his motion will have to convince the court that he is presenting a constitutional challenge to his underlying conviction or sentence.
In examining his motion for a constitutional claim, the court will find none. Why? Because the petitioner has filed a true Rule 60(b) motion, and such motions do not contain constitutional claims. See supra Part II.B. The petitioner might obtain a COA in the 60(b)(3) context only if the court — the district court or this court — looks beyond the Rule 60(b) motion to his habeas petition to determine whether the petitioner there presented a constitutional claim that satisfies § 2253(c)(2)’s “substantial showing” requirement. The petitioner will never prevail on a motion under Rule 60(b)(1), (2), (4), (5), or (6) because the petitioner’s application to this court for leave[28] to file such a motion will *1303 not satisfy either of § 2244(b)(2)’s alternative requirements.[29] Why? Because the text of those requirements, taken literally, precludes the court from looking beyond the Rule 60(b) motion by limiting the court to a consideration of “claim[s] presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application.... ”
The bottom line of this discussion is twofold. First, the majority completely eviscerates Rule 60(b)(1), (2), and (4)-(6). As they apply to habeas petitioners, these provisions are now off the books in the Eleventh Circuit.[30] Second, the majority does away with a significant part of a petitioner’s right to prosecute a true Rule 60(b)(3) motion. The petitioner may file the motion, but if the district court denies it, whether he will obtain a COA and thus be able to appeal the denial is problematic.[31]
I further explain this second consequence of the majority opinion by examining four hypothetical scenarios. These scenarios consider how a court’s decision *1304 whether to grant a COA as to a judgment denying a habeas petition would affect the decision whether to grant a COA as to an order denying a Rule 60(b)(3) motion. Before I begin, though, two observations must be made about the assumptions underlying the scenarios.
First, a Rule 60(b) motion that states a new constitutional claim is an SSHP, and the district court, lacking jurisdiction to entertain it, must reject it on that ground.[32] See supra Part II.D. Thus, in discussing the implications of the majority’s holdings, I refer to true Rule 60(b) motions (which by definition do not state a constitutional claim).
Second, because a true Rule 60(b)(3) motion does not contain a constitutional challenge to the petitioner’s state court conviction or sentence, the question becomes: where would the COA court look to determine whether the petitioner has made “a substantial showing of the denial of a constitutional right?” The majority’s answer to this question is that the court— the district court or this court — must look somewhere else. In deciding these appeals, the majority chooses to examine two sources. In Lazo, for example, the majority examines the allegations of the petitioner’s motion, which was brought under “Rule 60(b)(4) and/or (6).” The motion was an SSHP because it alleged the denial of constitutional rights. Finding no merit in the constitutional claims the motion presented, the majority denies a COA. In Gonzalez, however, the majority faces a true Rule 60(b)(6) motion. Because the Rule 60(b) motion does not contain constitutional claims, the majority looks not to the motion but to the allegations of the petitioner’s habeas petition for evidence of the denial of a constitutional right. The majority concludes that such evidence satisfies the constitutional-claim element of § 2253(c)(2) because the majority “cannot say that Gonzalez’s claim is not debatable among jurists of reason.” Maj. op. at 1268. Having so concluded, the majority grants a COA and then affirms the district court’s decision. Finally, in Mobley, the majority looks, as in Lazo, to the allegations of the Rule 60(b) motion, concludes that such allegations satisfy § 2253(c)(2)’s “substantial showing,” grants a COA, and then affirms the district court’s decision.
I now turn to the four hypothetical scenarios, each involving a true Rule 60(b)(3) motion, to illustrate how the majority’s holding — that the petitioner must obtain a COA in order to appeal the denial of his motion — will play out.
In the first scenario, the petitioner obtained a COA to appeal the denial of habe-as relief, and we affirmed on appeal. The petitioner then moved the district court pursuant to Rule 60(b)(3) to set aside its decision on the ground that is decision was obtained through fraud. The district court denied the motion. Can the petitioner obtain a COA to appeal? Our earlier affir-mance of the district court’s rejection of the petitioner’s constitutional claims should prompt the district court and this court to say that the petitioner cannot satisfy § 2253(c)(2)’s requirement that he make a “substantial showing of the denial of a constitutional right.” If a COA were to issue, it would cast doubt on the correctness of our earlier decision affirming the district court’s denial of habeas relief; hence, issuing a COA is not in the cards. Result: In this situation, the petitioner never obtains a COA to appeal.
In the second scenario, the petitioner sought to appeal the district court’s order denying habeas relief but failed to obtain a *1305 COA. The petitioner thereafter moved the district court to set aside its decision under Rule 60(b)(3), and the court denied the motion. Can a COA issue so that the petitioner can appeal the ruling? Yes, but in issuing the COA, the court — the district court or this court — -would be casting doubt on the correctness of the earlier decision denying the COA. Absent a sound reason for effectively overruling the prior COA denial, I suggest that a COA would not issue. Result: In this situation, the petitioner never obtains a COA.
In the third scenario, this court granted a COA, and while the petitioner’s appeal was pending, the petitioner moved the district court to set aside its decision under Rule 60(b)(3).[33] The court denied the motion. Is a COA likely to issue? Since the district court or this court previously found that the petitioner had made a § 2253(c)(2) “substantial showing of the denial of a constitutional right” and the appeal is still pending, I suggest that a COA would issue and the petitioner’s appeal of the Rule 60(b)(3) ruling would proceed.[34] Result: In this situation, the petitioner obtains a COA.
In the fourth scenario, the district court denied habeas relief, and the petitioner did not appeal. After the thirty-day appeal period expired, the petitioner filed a Rule 60(b)(3) motion. The court denied the motion, and the petitioner applied for a COA. He obtains a COA if the allegations of his habeas petition satisfy § 2253(c)(2)’s “substantial showing” criterion. Result: In this situation, the petitioner might obtain a COA.
In sum, these four scenarios indicate that under the majority’s § 2253(c)(2) holding, the merit of a petitioner’s Rule 60(b)(3) motion will have no bearing on the court’s decision on whether to grant a COA. Under § 2253(c)(2), the only question for the COA court is whether the petitioner has “made a substantial showing of the denial of a constitutional right.” All that a true Rule 60(b)(3) motion alleges is that the petitioner’s adversary obtained a final order through fraud from the district court. It does not address the sufficiency of the petitioner’s claim that his conviction or sentence was obtained in violation of the Constitution.
V.
Having expressed my disagreement with the majority’s principal holdings, I turn to the appeals before us, Lazo, Gonzalez, and Mobley.
A.
On January 2, 2002, after Emile Lazo had lost his first § 2255 motion and failed to obtain a COA to appeal, he “filed a motion and brief, which he labeled as being pursuant to Fed.R.Crim.P. 12(b)(2) and Fed.R.Civ.P. 60(b)(4), (6), seeking relief from the district court’s previous denial of his § 2255 motion.” Lazo v. United States, 314 F.3d 571, 572 (11th Cir.2002) (vacated panel opinion). In this motion, Lazo claimed that
his conviction is void because the district court lacked subject matter jurisdiction to hear his case and impose a sentence *1306 because the indictment was insufficient[,] the grand jury failed to allege an interference with interstate and/or foreign commerce under 21 U.S.C. § 801, failed to give him “notice” as to the penalty against which he must defend in violation of the Sixth Amendment, and failed to give jurisdiction to the sentencing court to impose his sentence under 21 U.S.C. § 841(b)(1)(A) by failing to establish an interference with interstate commerce.
Id. at 573. On March 1, 2002, the district court denied the motion without explanation — and without indicating whether it was treating Lazo’s filing as a true Rule 60(b) motion or as an SSHP. On April 30, 2002, Lazo filed a notice of appeal[35] and applications for leave to proceed in forma pauperis (“IFP”) and for a COA. The court granted his application for IFP but denied a COA.
We thereafter noted probable jurisdiction and the appeal was briefed. Addressing the threshold question the appeal posed — whether the motion Lazo filed in the district court should be treated as a second or successive motion under 28 U.S.C. § 2255 — a panel of this court answered in the affirmative. In the panel’s view, Lazo’s motion was “really a successive § 2255 motion in Rule 60(b)’s clothing,” since it merely “[made] new arguments attacking the validity of [the] sentence,” and did not articulate a valid ground of relief under Rule 60(b). Id. at 573. Because Lazo had not obtained leave to file a successive petition under 28 U.S.C. § 2244(b)(3)(A),[36] the panel recognized that the district court should have dismissed Lazo’s purported Rule 60(b) motion for lack of jurisdiction. The panel nonetheless determined that “the district court’s denial of [Lazo’s] successive § 2255 motion [was] a ‘final order’ in a § 2255 proceeding,’ ” and that Lazo needed a COA to appeal that denial. Id. at 575. The panel then construed Lazo’s notice of appeal as a motion for a COA and denied it. Id. at 574-75.[37]
I agree with the panel that Lazo’s Rule 60(b) motion was really an SSHP, and that the district court lacked jurisdiction to consider it. Thus, rather than “denying” the motion without explanation — which implied that the court was adjudicating the motion on its merits — the district court should have dismissed it for lack of jurisdiction. The panel, in turn, should have affirmed the district court’s judgment on the ground that the district court lacked jurisdiction to entertain Lazo’s motion. The majority should also affirm on that ground. Instead, the majority searches for a *1307 § 2253(c)(2) showing of “a denial of a constitutional right” and denies a COA, which means that Lazo cannot prosecute his appeal. By operation of law, therefore, the district court’s decision stands.
B.
On September 9, 1998, the district court entered a final order dismissing Aurelio Gonzalez’s § 2254 petition as time-barred under 28 U.S.C. § 2244(d)(1) because the petition had not been filed within AED-PA’s one-year limitations period. Gonzalez v. Sec. for the Dep’t of Corr., 317 F.3d 1308, 1310 (11th Cir.2003). Gonzalez filed a timely notice of appeal and applied for a COA. The district court denied his application; we did likewise on April 6, 2000. Id. at 1310. The consequence of our denial of a COA for Gonzalez was that the district court’s final order stood as if we had affirmed it on appeal.
On August 2, 2001, Gonzalez, proceeding pro se, “filed a Rule 60(b) motion asking the district court to reconsider its ... order denying him habeas relief on statute of limitations grounds in light of the intervening Supreme Court decision in Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), which interpreted the ‘properly filed’ clause of the tolling provision contained in § 2244(d)(2).” Gonzalez, 317 F.3d at 1310. As I read Gonzalez’s somewhat disjointed handwritten motion, he contends that had Artuz been decided before the district court ruled on the timeliness of his habeas petition, the court would not have held it time barred. The district court denied Gonzalez’s motion on March 5, 2002, because the “[petitioner already ha[d] taken an appeal to the Eleventh Circuit. Accordingly, [the court] no longer ha[d] jurisdiction over his claims.” Gonzalez filed a timely notice of appeal, and applications to proceed IFP and for a COA. The district court refused to issue a COA, but it granted Gonzalez leave to appeal IFP.
Gonzalez then applied to this court for a COA. A panel of the court acknowledged that Gonzalez’s motion is a true Rule 60(b) motion, filed apparently under Rule 60(b)(6),[38] but, as the majority does today, denied his application. Id. at 1311-13. The panel did so “[f]or two independently adequate reasons.” Id. First, it held that under our decision in Mobley v. Head, 306 F.3d 1096 (11th Cir.2002) (from which I dissented), “all Rule 60(b) motions in habe-as cases are to be treated as second or successive petitions.” Gonzalez, 317 F.3d at 1312. Second and alternatively, the panel found that the “extraordinary circumstances” that Ritter v. Smith, 811 F.2d 1398 (11th Cir.1987), requires as a condition precedent to granting Rule 60(b)(6) relief were absent. Id. at 1312-13. According to the panel, Gonzalez had not shown that
(1) the erroneous judgment had not been executed; (2) there was only minimal delay between the entry of the judgment the motion sought to set aside and the filing of the motion; and (3) there was a close connection between the case and the case that gave rise to the intervening decision upon which the motion was based.
Id. at 1313.
We review district court denials of Rule 60(b) motions for abuse of discretion. Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1304 n. 4 (11th Cir.2000). Applying that standard, the panel refused to issue a COA because it “[did] not find it debatable among jurists of reason whether the denial of Gonzalez’s Rule 60(b) motion was an abuse of discretion.” Gonzalez, 317 F.3d at at 1312. The panel so held even though the district court had not entertained the *1308 motion because it mistakenly thought that it lacked jurisdiction to hear it.
I disagree with the panel’s decision, notwithstanding that it has been vacated by the order taking this case en banc.' I disagree because it is hornbook law that a district court abuses its discretion when it misapplies the law in reaching its decision. Here, the district court misapplied the law; it erroneously denied the motion because it thought it lacked jurisdiction to hear it. I would therefore vacate the district court’s ruling and remand the case with the instruction that the court consider the motion on its merits.
The majority, however, issues a COA[39] and affirms the district court’s decision as if the district court had actually entertained Gonzalez’s motion and ruled on its merits:
Gonzalez does not contend that there was any clerical error in the final judgment denying him federal habeas relief, or that fraud was used to obtain that judgment. His sole contention is that the [district court’s] judgment [denying habeas relief) was wrong, because the subsequently released [Supreme Court] decision in [Artuz ] shows that the “properly filed” language of § 2244(d)(2) was misinterpreted to deny him relief. He is attacking the merits of that decision — the term “merits” referring to the correctness of the decision itself even though the ground of this particular decision was the statute of limitations, an affirmative defense.
Gonzalez’s Rule 60(b) motion is an attempt to relitigate a claim that has already been presented in a prior application [for a COA] and rejected, which means it must be dismissed under § 2244(b)(1).... An error of law, even one demonstrated by an intervening decision, does not fit either of the extra-statutory exceptions to the rule we have borrowed from Calderon and announced today.
Maj. op. at 1281.
What the majority overlooks is that Gonzalez’s Rule 60(b) motion seeks, in legal effect, to invoke an exception to the mandate rule.[40] As I state above, the legal effect of our denial of a COA to review the district court’s final decision denying habe-as relief is that the district court’s final decision stands as if affirmed by this court. That is, for the purposes of the mandate rule, the order we entered denying a COA was the functional equivalent of a mandate from this court affirming the district court’s decision.[41]
*1309 The district court denied relief on the ground that AEDPA’s one-year limitations period barred Gonzalez’s § 2254 petition. The mandate rule precludes Gonzalez from asking the district court to reconsider its decision unless he can base his request on one of the exceptions to the rule:
The “mandate rule,” as it is known, is nothing more than a specific application of the “law of the case” doctrine. This doctrine stands for the proposition that an appellate decision on an issue must be followed in all subsequent trial court proceedings unless the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice.
Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir.1985) (citations omitted). What Gonzalez’s Rule 60(b)(6) motion alleges, in so many words, is that “an intervening change in the controlling law dictates a different result.” I suggest that Rule 60(b) is the perfect vehicle for invoking the intervening-change-in-the-law exception to the mandate rule.[42] In fact, I can think of no other procedural rule that is as tailor made for this situation as Rule 60(b)(6).
In sum, I disagree with the majority’s decision that a COA is required to review the district court’s refusal to entertain Gonzalez’s motion. I also dissent from its disposition, which is that the district court’s ruling stands unreviewable. The message the majority is sending to the district judges of this circuit is that they can deny with impunity a Rule 60(b) motion. Can it be that the framers of Rule 60(b) and the rules governing habeas petitions and the Congress that enacted them meant to say that a district court decision not to entertain a petitioner’s true Rule 60(b)(6) motion is unreviewable?[43] I think not.
C.
In Mobley, the majority grants a COA, reviews the petitioner’s collateral motion as if he had filed it under Rule 60(b)(3), finds no merit in the motion, and affirms the district court, which denied the motion because it felt bound by Felker v. Turpin, 101 F.3d 657 (11th Cir.1996).[44] I disagree with the majority’s holding that a Rule 60(b)(3) decision cannot be appealed absent a COA. I agree, however, with the majority — for the reasons stated in my dissent to the panel’s opinion, Mobley, 306 F.3d at 1097, which the majority appears to adopt — that Mobley’s motion fails to *1310 state a case under Rule 60(b)(3).[45] I therefore concur in the majority’s decision affirming the district court’s judgment.[46]

.I join the majority in affirming the district court's judgment in Mobley. I specially concur in the majority's judgment in Lazo. The majority refuses to grant Lazo a certificate of appealability and therefore effectively affirms the district court’s judgment denying his Rule 60(b) motion. Because the district court lacked subject matter jurisdiction to entertain the motion — which was a second or successive motion under 28 U.S.C. § 2255 disguised as a motion under Rule 60(b) — I would affirm its judgment. I dissent, however, from the majority's decision to affirm in Gonzalez. In that case, the district court held that it lacked jurisdiction to consider the petitioner’s Rule 60(b) motion, and the majority affirms. I believe the district court had jurisdiction. Therefore, I would vacate the district court's ruling and remand the case with the instruction that the district court consider the motion on its merits.

. Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir.1985); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2868, at 396 (1995).

. The majority also recognizes a second exception. The district courts retain the authority under Fed.R.Civ.P. 60(a) to correct “a mere clerical mistake” in a final judgment. Maj. op. at 1278. None of the three appeals before us implicates this rule; hence, I make no further mention of it.

. The majority's decision restricts the ability of prisoners to file Rule 60(b) motions and independent actions preserved by the Rule’s savings clause. Maj. op. at 1277-1278 n. 11. Before today, such actions were available to habeas petitioners. See, e.g., Buell v. Anderson, 48 Fed.Appx. 491, 498 (6th Cir. *1288 2002) ("An independent action for relief is an equitable remedy available in civil trials, including habeas proceedings which are conducted under civil rules of procedure.”); Hess v. Cockrell, 281 F.3d 212, 217 (5th Cir.2002) (denying the habeas petitioner’s independent action for relief from adverse judgment because the petitioner failed to establish "[t]he elements of an independent action” as prescribed in Bankers Mortgage Co. v. United States, 423 F.2d 73, 79 (5th Cir.1970)). Unless I note otherwise, this opinion applies equally to both Rule 60(b) motions and independent actions preserved by the Rule.

. Both state and federal prisoners must obtain leave of the appropriate court of appeals before filing second or successive collateral attacks upon their convictions or sentences. A court of appeals may only grant such leave to state prisoners who satisfy the criteria of 28 U.S.C. § 2244(b) or federal prisoners who satisfy the criteria of § 2255. Section 2244(b) provides:
(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
(b)(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
(A) the applicant shows that that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfin-der would have found the applicant guilty of the underlying offense.
Section 2255 provides:
A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
Throughout this opinion, I analyze the effects of the majority's holdings on litigation involving Rule 60(b). Although I often write in terms of how § 2244’s restrictions on successive petitions (filed by state prisoners under § 2254) will impact such litigation, this discussion generally extends equally to § 2255's comparable restrictions on successive motions (filed by federal prisoners under that section). While §§ 2244 and 2255 are not textually identical, their differences are of no consequence in my analysis unless I note otherwise.

. Here and throughout this opinion, the phrase "second or successive habeas petitions” and the abbreviation "SSHP” refer also to second or successive motions under § 2255.

. The minor amendments made since 1946 are of no concern to us here.

. There are at least three examples in this category. First, Rule 60(b) states that it does not "limit the power of a court to ... grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655,” which prescribes how courts should deal with absent defendants in lien enforcement proceedings. Second, the 1946 advisory committee’s note recognizes that “under ... the Soldiers' and Sailors’ Civil Relief Act of 1940 ... a judgment rendered in any action or proceeding governed by the [Act] may be vacated under certain specified circumstances upon proper application to the court.” Third, "the declaratory-judgment statute [28 U.S.C. § 2202] authorizes the court to grant additional 'necessary or proper relief based on any judgment entered under it, and a party can seek [such relief] without satisfying the requirements of Rule 60(b).” 11 Wright, Miller & Kane, supra, § 2869, at 408.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. The next day, he moved the district court pursuant to Rule 60(b) to vacate its decision which granted in part and denied in part his application for a writ of habeas corpus. The filing of the Rule 60(b) motion had no bearing on the Supreme Court's eventual decision in Calderon, and it has no bearing on our decisions today.

. I assume here that the majority is only concerned with motions to reconsider an appellate decision after the mandate issues. Despite its treatment of motions to recall the mandate, the majority opinion does not explicitly interpret Calderon to treat timely petitions for rehearing as SSHPs. I believe this discrepancy might be explained by the fact that a habeas petitioner’s petition for rehearing must be filed prior to the court’s issuance of its mandate, while the court can still revisit its decision. See Fed. R.App. P. 41.
Furthermore, I read Calderon to apply only to motions to recall the mandate that ask the court of appeals to entertain new constitutional challenges to a petitioner's conviction or sentence or revisit old ones. I disagree with the majority insofar as it reads Calderon more broadly. If the motion to recall the mandate challenged the integrity, rather than correctness, of the appellate decision, that motion would, in my view, fall beyond Calderon's scope. I must confess, however, that such a motion is difficult to imagine.

. In a case in which, after the court of appeals mandate issued, the Supreme Court handed down a new rule of constitutional law made retroactive to cases on collateral review that would have required the court of appeals to decide a claim in favor of, rather than against, the petitioner, query whether AEDPA, as interpreted in Calderon, would permit the court to grant the petitioner's motion to recall the mandate (on the basis of the new rule) or require the court to deny the motion under § 2244(b)(1). If AEDPA would bar the court from granting the petitioner's motion, the petitioner's avenues of relief would be to (1) move the district court pursuant to Rule 60(b)(6) to vacate its decision rejecting the claim, or (2) bring an independent action, as permitted by Rule 60(b)'s savings clause.

. In denying the motion, although the law would not require it to do so, the court could call the petitioner’s attention to § 2244(b)(3)(A) and inform the petitioner that if he wishes to pursue his new claims, he must apply to this court for leave to file the claims in the district court.

. According to the majority,
Calderon's lessons about whether and when an appellate court’s power to recall a mandate may be used in habeas cases apply with as much force to the question of whether and when a trial court's Rule 60(b) authority to reopen a final judgment may be used in a habeas case. Recalling the mandate to reopen and alter the final judgment in a habeas case is the closest thing on the appellate level to the use of Rule 60(b) to reopen and change a final judgment at the trial level.
Maj. op. at 1275.

. After it receives a motion filed under one or more of these rules within this 10-day time limit, the court obviously retains jurisdiction beyond the 10 days to rule on the motion. A final judgment that contains injunctive relief may give the court jurisdiction to enforce such relief. Such retention of jurisdiction is not implicated in any of the cases now before us.

. If the district court judgment the court of appeals affirms is subject to collateral attack, the attack must be mounted in the district court via Rule 60(b), an independent action brought under the aegis of the Rule, or the implementation of one of the exceptions to the mandate rule.

. I am primarily concerned with the post-AEDPA cases, but also treat the pre-AEDPA cases from circuits that have not since ruled on the issue. For a collection of the pre-AEDPA cases, see 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure 1533 n. 16 (4th ed.2001).

. Although other courts have characterized the Second Circuit’s position as absolute, see, e.g., Rodwell, 324 F.3d at 69 (stating that ”[t]he Second Circuit has ruled categorically” that no Rule 60(b) motions are SSHPs); Dunlap v. Litscher, 301 F.3d 873, 876 (7th Cir.2002) ("The Second Circuit[ ] ... in Rodriguez ■ .. did not limit its ruling to [true Rule 60(b) motions]."), I do not wish to mischarac-terize its holding. Even after Rodriguez, I am unable to say for certain that a litigant in the Second Circuit could maintain a purported Rule 60(b) motion whose true aim is to challenge the underlying conviction on constitutional grounds.

. The Third and Fifth Circuits may also fall within this category, but their precedent is unclear. See United States v. Edwards, 309 F.3d 110, 113 (3d Cir.2002) (holding without extended discussion that even if the district court should have construed the petitioner’s motion under 18 U.S.C. § 3582(c)(2) as a Rule 60(b) motion, the court would nonetheless have had to recharacterize the Rule 60(b) motion as an SSHP); Hess, 281 F.3d at 214-15 (noting "the parties^] dispute [as to] whether or not [the Fifth Circuit] has completely closed the door on Rule 60(b) motions in habeas cases — in other words whether all such Rule 60(b) motions must be construed as successive petitions,” but declining to decide the circumstances under which a Rule 60(b) motion might be proper).

. I would also reemphasize that district courts should treat Rule 60(b)(6) motions with special caution. Rule 60(b)(6) allows a court to grant relief from a judgment for "any other reason" beyond those specified in Rule 60(b)(1)-(5). See Klapprott, 335 U.S. at 614-15, 69 S.Ct. at 390 ("[I]n simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.”). As the Supreme Court has held, "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances’ suggesting that the party is faultless in the delay.” Pioneer Inv. Serv. Co. v. Brunswick Associates Ltd. P’ship, 507 U.S. 380, 393, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993). The amorphousness of this subsection makes it particularly prone to abuse. As I noted in Mobley, "[a] district court that uses this 'catch-all' provision to allow a habeas corpus petitioner to obtain review of a new constitutional claim will ... eviscerate the provisions of AEDPA.” 306 F.3d at 1102 n. 3 (Tjoflat, J., dissenting).

. In discussing how a district court should treat true Rule 60(b) motions and SSHPs masquerading as Rule 60(b) motions, I omit reference to what might be termed “mixed” Rule 60(b) motions — motions that are in part true Rule 60(b) motions and in part SSHPs. A district judge should have no difficulty weeding out the SSHP allegations, disposing of them for lack of jurisdiction, and then passing on the merits of the allegations that are actually cognizable under the Rule.

. The petitioner must first seek a COA from the district court. 11th Cir. R. 22-l(a). If the district court denies a COA, the petitioner may seek one from our court. Fed. R.App. P. 22(b)(1). Furthermore,
if the district court denies a[COA], and at the time of docketing the appeal in [our *1299 court] the [petitioner] has not filed a renewed application for a [COA] in [our court], the application denied by the district court ... shall be construed by [our court] as a renewed application for a [COA].
llth Cir. R. 22-1 (c)(2).

. This point is discussed at length in Part IV, infra.

. The majority also relies on Kellogg v. Strack, 269 F.3d 100 (per curiam) (2d Cir.2001). The grounds for the petitioner’s Rule 60(b) motion in that case are unclear from the court’s opinion.

. While Langford is not entirely clear on this issue, I assume that AEDPA’s effective date fell after the petitioner filed his motion but before he filed his notice of appeal. The Supreme Court had not settled the question whether AEDPA's COA requirement applied in this circumstance until after 1998, the year of the Langford decision. See Slack v. McDaniel, 529 U.S. 473, 481, 120 S.Ct. 1595, 1602, 146 L.Ed.2d 542 (2000) (holding that "§ 2253 applies to appellate proceedings initiated post-AEDPA[,]” even when the underlying habeas proceeding was initiated a district court pre-AEDPA).

. This conclusion is not, as the majority suggests, in tension with my observation that § 2253 requires a COA only to appeal the district court's judgment denying habeas relief. See Maj. op. at 1265-1266 nn. 3-4. An appeal of a district court's dismissal of an SSHP (clothed as a Rule 60(b) motion) for lack of § 2244 leave to proceed requires no COA because it involves only a preliminary jurisdictional inquiry: whether the district court was correct in concluding that it did not have a true Rule 60(b) motion, which it should entertain, before it. Of course, if a petitioner filed an SSHP in the district court after obtaining § 2244 leave, the district court's denial of the SSHP would be "the final order in a habeas corpus proceeding" under § 2253(c)(1). The petitioner would therefore need a COA to appeal the district court’s denial.

.We rely on the Ninth Circuit's view as to the content of the petitioner's claims. Obviously, the record of that case is not before us.

. Suppose the petitioner does not seek § 2244(b)(3)(A) leave of this court to file in the district court a Rule 60(b) motion under subparts (1), (2), (4), (5), or (6) but, instead, files the motion in the district court. The district court denies the motion, and the petitioner files a notice of appeal, invoking our 28 U.S.C. § 1291 jurisdiction. Would the majority require the issuance of a COA as a condition precedent to entertaining the appeal, or would the majority permit the appeal to proceed without a COA? I do not find an explicit answer to this question in the majority opin *1303 ion. The majority’s disposition of the Gonzalez case, however, implies that a COA must he obtained. Gonzalez sought relief from a ha-beas judgment in the district court on a Rule 60(b)(6) ground, namely that a subsequent decision of the Supreme Court cast doubt on that habeas judgment. The district court denied his Rule 60(b) motion, and Gonzalez filed a notice of appeal. In disposing of this case, the majority now grants a COA and then affirms the district court because the Rule 60(b) motion did not claim fraud, which is the only Rule 60(b) claim that remains available to collaterally attack the denial of a habeas corpus petition. I question the wisdom of having this court expend its resources deciding to issue a COA and then passing on the merits of Gonzalez’s appeal. Instead of taking these steps, it would be more efficient simply to dismiss the appeal on the ground that a Rule 60(b) motion is no longer available. Had the district court not granted Gonzalez leave to appeal IFP and he applied to this court for such leave, this court could have denied it on the ground that the appeal was frivolous.

. Nor could a true Rule 60(b) motion satisfy the comparable criteria of § 2255, which applies to federal prisoners. See supra note 5. As true Rule 60(b) motions filed in a § 2255 proceeding would challenge only the § 2255 judgment, no such motion could assert that the prisoner's conviction or sentence was imposed "imposed in violation of the Constitution or laws of the United States.”

. In writing Rule 60(b)(1), (2), (4)-(6) off the books, what the majority seems to be holding is that Congress, in enacting AEDPA, repealed these provisions by implication. But "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.” Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Tellingly, Congress was not blind to the effects AEDPA would have on the rules of procedure; for example, focusing on the relevant Federal Rules of Appellate Procedure, Congress amended Federal Rule of Appellate Procedure 22. See AEDPA of 1996, Pub.L. No. 104-132, 110 Stat. 1214 § 103. Congress did nothing, however, to Rule 60(b); rather, it simply let the Rule stand as is. In allowing Rule 60(b) to stand while limiting the availability of habeas relief under AEDPA, Congress did not create an "irreconcilable” situation. There is nothing irreconcilable about cutting down on SSHPs and at the same time permitting the district courts to set aside a habeas judgment that should not stand under Rule 60(b).

.I note here that the petitioner's respondent (the State) does not have to obtain a COA as a condition precedent to appealing a district court’s order setting aside the final order (that denied the petitioner habeas relief). AEDPA extends the COA requirement only to petitioners, not to respondents. Section 103 of AED-PA expressly amended the Federal Rules of Appellate Procedure to guarantee this result. See AEDPA of 1996, Pub.L. No. 104-132, 110 Stat. 1214 § 103; Fed. R.App. P. 22(b)(3) ("A certificate of appealability is not required when a state or its representative or the United States or its representative appeals.”).

. To obtain relief in the district court, therefore, the petitioner must first obtain leave of this court pursuant to § 2244(b)(3)(A).

. The district court has jurisdiction to consider the Rule 60(b)(3) motion even though the petitioner's appeal of the denial of habeas relief is pending. Stone v. Immigration and Naturalization Serv., 514 U.S. 386, 401, 115 S.Ct. 1537, 1547, 131 L.Ed.2d 465 (1995) ("Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court. The denial of the motion is appealable as a separate final order, and if the original appeal is still pending it would seem that the court of appeals can consolidate the proceedings.”).

. This scenario is not likely to occur. In fact, in over 28 years on this court and its predecessor Fifth Circuit, I have never encountered it.

. Lazo had 60 days from the date of the district court's decision to file a notice of appeal. See Fed. R.App. P. 4(a)(1)(B).

. Section 2255 states that
[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
The reference to § 2244 is to § 2244(b)(3)(A), which states:
Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

. Relying upon Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), the panel determined that a COA could not issue because of a "plain procedural bar,” i.e., Lazo's failure to seek leave from our court to file a successive petition. Lazo, 314 F.3d at 574.

. Rule 60(b)(6) authorizes a district court to vacate its final judgment for "any other reason justifying relief from the operation of the judgment.”

.In deciding whether to issue Gonzalez a COA, the majority looks to his habeas petition (which the district court had denied) to see whether he has made the § 2253(c)(2) substantial showing of the denial of a constitutional right. According to the majority, the petition alleged that Gonzalez’s "guilty plea was unintelligent, unknowing, and involuntary based on specific evidence he has proffered.” Maj. op. at 1268. The majority concludes that Gonzalez satisfies § 2253(c)(2)’s requirement because it “cannot say that Gonzalez’s claim is not debatable among jurists of reason.” Id. I submit that looking beyond Gonzalez's Rule 60(b) motion — to the habeas petition — for evidence of the denial of a constitutional right is contrary to this court's statement in Gulf Coast Fans, Inc. v. Midwest Elecs. Imp., Inc., 740 F.2d 1499, 1507 (11th Cir.1984), that our review of a district court’s disposition of a Rule 60(b) motion is "restricted to those issues raised in [the movant’s] Rule 60(b) motion.”

. The mandate rule and the law of the case doctrine are for our purposes interchangeable. See Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir.1985) ("The ‘mandate rule,' as it is known, is nothing more than a specific application of the ‘law of the case’ doctrine.”). Thus, in referring to the mandate rule, I am also referring to the law of the case doctrine.

. Another way of looking at this situation is to treat the district court's final decision deny *1309 ing Gonzalez’s habeas petition as if Gonzalez had not appealed the decision.

.The majority misapprehends this point to mean that any motion asserting an intervening change in the law is a true Rule 60(b) motion if filed as such. As I have explained, § 2244(b)(2)(A) applies to a collateral attack on a habeas petitioner’s sentence or conviction, even if that attack rests upon a change in the law. Rule 60(b), on the other hand, should apply free of AEDPA's limitations when a petitioner attacks the integrity of a district court’s habeas judgment. As the panel correctly understood, Gonzalez’s motion is a true Rule 60(b) motion, not because it asserts a change in the law, but because it "attacks the prior federal court habeas order denying relief from the state court judgment of conviction and sentence, instead of attacking the underlying conviction and sentence judgment itself....” Gonzalez, 317 F.3d at 1311.

. Had the district court granted Gonzalez the relief he seeks, the State could have appealed the decision without obtaining a COA. See supra note 31.

. The district court read Felker as requiring the district courts of this circuit to treat all Rule 60(b) motions as SSHPs. The majority effectively limits this interpretation of Felker's holding by omitting Rule 60(b)(3) motions from mandatory SSHP treatment.

. I read the majority as perhaps reaching alternative holdings: (1) if reasonable jurists could construe Mobley's motion as having been filed under Rule 60(b)(3), the motion is meritless; (2) if reasonable jurists could construe Mobley’s motion as alleging a new constitutional claim, it is an SSHP and fails to meet the criteria of § 2244(b)(2).

. I also concur in the court's decision to deny Mobley’s motion to recall the mandate in Mobley v. Head, No. 00-13980, and Mobley’s motion to stay his execution.